ELEANOR G. RYAN vs. SUPERINTENDENT OF SCHOOLS OF
QUINCY & another.

Norfolk.   January 2, 1973. — June 11, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY,
KAPLAN, & WILKINS, JJ.

Equity Pleading and Practice, Findings by judge, Report of evidence, Appeal. School and School Committee.

In an appeal subject to G. L. c. 214, §§ 19 and 22 to 28, voluntary findings of fact by the trial judge not purporting to state all the facts are not a report of "the material facts" under G, L. c. 214, § 23. [733–734]

A stipulation that both parties requested a report of the evidence to this court did not, without sanction by the lower court, satisfy the requirements of, G. L. c. 214, § 24. [734–735]

A transcript of evidence which has not been ordered reported by the trial judge and which does not include important exhibits is not a report of the evidence under G. L. c. 214, § 24. [735–736]

Where there was no report of the material facts or evidence, a trial judge's order for mandamus to reinstate a tenured public school teacher, appealed under G. L. c. 214, §§ 19 and 22 to 28, implied a finding by the judge of every fact essential to sustain the order. [736]

One who taught in a public school a specified portion of each week for more than three consecutive school years held tenure under G. L. c. 71, § 41. [736–740]

PETITION for a writ of mandamus filed in the Superior Court on March 17, 1969.

The case was heard by Robert Sullivan, J.

Harry Pavan, City Solicitor, for the respondents, submitted a brief.

John A. Sullivan (Richard K. Sullivan with him) for the petitioner.

QUIRICO, J.   This is a petition for a writ of mandamus to compel the respondents, the superintendent of schools and the school committee of the city of Quincy, to reinstate the petitioner to the position of a teacher in the public schools of the city.   The case is before us on the re-

spondents' appeal from an order for judgment in favor of the petitioner.

The principal issue presented by the petition is whether the petitioner, at the time the respondents purported to terminate her employment, had acquired tenure under G. L. c. 71, § 41, as amended through St. 1956, c. 132, § 1. If she had, she could be dismissed only by compliance with the provisions of G. L. c. 71, § 42, as amended through St. 1966, c. 185, § 2. The respondents did not proceed under or comply with § 42.

The case was originally referred to an auditor whose findings of fact, by agreement of the parties, were to be final. After holding hearings he filed a report of his findings which were in favor of the respondents. For reasons not apparent in the record before us, the report was ordered struck. The respondents' exception to that order has not been argued in their brief and it is therefore considered waived. S.J.C. Rule 1:13, 351 Mass. 738.

The petition was thereafter heard on the merits by a different judge (trial judge) whose order for judgment in favor of the petitioner is the subject of this appeal. Apparently the trial judge heard no testimony but instead heard and decided the case solely on the basis of a copy of the transcript of the oral testimony which had been presented at the hearing before the auditor. This conclusion is based on the following stipulation of the parties filed in the Superior Court on December 31, 1971: "The parties in the above-entitled matter, stipulate that the evidence used before the Court and upon which the findings of fact, rulings of law, and order for judgment of the Court dated December 20, 1971, were made was the transcript of the testimony before the Auditor on September 21, 1970, and . . . that in lieu of evidence before the Court the parties submitted to the Court the said transcript and said transcript was the sole evidence before the Court. . . ." A copy of the transcript described in the stipulation was filed with the clerk on the same date the stipulation was filed. The record dis-

closes no approval by the trial judge of the stipulation or the filing of the transcript. See *Gordon* v. *Guernsey*, 316 Mass. 106, 107–108.

On whatever evidence the trial judge had before him, he made the following findings of fact: "I find that the petitioner had served as a teacher (within the meaning of the definition set out in G. L. c. 32, § 1) for a period of four years next prior to her dismissal in the public school system of the City of Quincy. I further find that the petitioner should have been deemed to have served at the discretion of the school committee and should have been considered to have been on tenure within the meaning of G. L. c. 71, § 41. She was discharged at the commencement of the school year in 1968." On the basis of those findings the trial judge ruled "that the dismissal of the petitioner as aforesaid was contrary to the provisions of G. L. c. 71, § 42." He then ordered that a writ of mandamus issue directing the respondents "to restore and reinstate the petitioner and to assign to her the duties consistent with her position and to consider her a teacher at discretion," and to comply with the provisions of G. L. c. 71, § 42, in any proceedings to dismiss the petitioner from her position. It is the respondents' appeal from this order which is now before us.

1. We first consider the nature and scope of this appeal. By virtue of G. L. c. 213, § 1D, inserted by St. 1943, c. 374, § 4, as amended, this appeal is subject to the provisions of G. L. c. 214, §§ 19 and 22 to 28, inclusive, relative to appeals in equity suits. For the purpose of this decision we need concern ourselves only with G. L. c. 214, §§ 23 and 24.

Under § 23 the parties were entitled to file a written request that the trial judge "report the material facts found by him" in deciding the case. Neither party filed such a request, with the result that the trial judge was not required to report any facts found by him. Nevertheless, he voluntarily made brief findings of fact, "but he did not state that the findings expressed were all of the findings upon which he based his decree [or order for

judgment], and there is nothing in their form to indicate that he intended them as such. . . . The entry of the decree [or order] imported a finding of every fact essential to sustain it and within the scope of the pleadings. . . . This is true even though the [trial] judge made specific findings of certain facts, as long as he did not purport to state all of the material facts." *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561, and cases cited. Although we have occasionally said "that a report of facts voluntarily made by the trial judge has the same effect as a report of 'the material facts' under the statute . . . [t]his statement cannot be understood to mean that a voluntary finding of certain facts only which may not amount to a full report of all the facts upon which the decree [or order] rests is for all purposes equivalent to the complete report of 'the material facts' contemplated by the statute." *Birnbaum* v. *Pamoukis, supra*, 562.

Under § 24 the parties were entitled to request that the trial judge order that the testimony of witnesses examined orally at the trial be reported to this court. Neither the record before us nor the copy of the docket entries filed with us (*Styrnbrough* v. *Cambridge Sav. Bank*, 299 Mass. 22, 24) indicates that any such request was made for a report of the evidence. Despite that, the stipulation filed by the parties on December 31, 1971, relating to the transcript of testimony before the auditor, concludes with the statement "that both parties renew their request that said evidence be reported to the Supreme Judicial Court." Section 24 requires that a party desiring that the evidence be reported to this court make a request therefor in the Superior Court. While it is arguable that the stipulation which contained the language quoted above can be construed as such a request, the statute requires more. The evidence cannot be reported under the statute unless the trial judge acts favorably on such a request by ordering that the evidence be reported. *Silke* v. *Silke*, 325 Mass. 487, 490. *Thayer Co.* v. *Binnall*, 326 Mass. 467, 482. *Teal* v. *Jagielo*, 327 Mass. 156, 157.

*Delorafano* v. *Delafano*, 333 Mass. 684, 685. Rule 76 of the Superior Court (1954). This aspect of the case is therefore governed by our decision in *Price* v. *Price*, 348 Mass. 663, cert. den. 382 U. S. 820 (1965), where we said, at 665: "It is settled that where there is nothing outside of a stenographer's recital to indicate that any person was designated to take the testimony and where no record indicates any action of the judge or notation by the clerk with reference to any appointment, a transcript cannot be considered part of the record. . . . [Citation omitted.] An examination of the docket . . . [citation omitted] indicates no order by the trial judge that the transcript be included in the record. . . . [Citations omitted.] We thus have not considered the evidence."

There is a second and equally compelling reason why we should not treat the transcript placed before us by stipulation but without sanction of the trial judge as a report of the evidence. It is obvious that the transcript is but a part of the evidence originally introduced at the hearing before the auditor. It indicates that at least three letters sent by the respondents to the petitioner and referring to the relationship of the parties were introduced as exhibits. Two of the letters appear to have referred to the terms of the hiring of the petitioner, and the third, dated May 28, 1968, appears to have purported to terminate her employment. These exhibits have not been furnished to this court. In *Thayer Co.* v. *Binnall*, 326 Mass. 467, where we were offered an unofficial transcript not authorized by the trial judge, and numerous exhibits introduced in evidence at the trial were not before us, we said, at 483: "Some of them [exhibits] might have been of considerable materiality in influencing the judge in making his findings of fact. We cannot say that they did not form an important branch of the evidence. It would not be safe for us to consider the so called transcript without also considering these exhibits. . . . Obviously, these cases cannot be heard on appeal 'upon the same evidence as on the original hearing.' . . .

We certainly should not attempt to decide issues of fact on only a portion of the evidence." [1]

Summarizing what is before us, we have an appeal based on a voluntary report of some facts but not appearing to be all of the material facts, and no report of the evidence within the meaning of G. L. c. 214, § 24. In that situation the entry of the order for judgment implied a finding by the trial judge of every fact essential to sustain such an order if it is otherwise within the scope of the pleadings and not inconsistent with the specific findings. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561–562. The order for judgment was clearly within the scope of the pleadings in this case, and it was not inconsistent with any of the meager specific findings made by the trial judge. Although we might be warranted in affirming the order on this basis alone, we do not so limit our decision.

2. Since the unofficial transcript is before us by agreement of all parties, we have examined it. In doing so we intend to establish no precedent requiring us to do so in other cases. *Bowles* v. *Comstock*, 286 Mass. 159, 162. *Gearin* v. *Walsh*, 299 Mass. 145, 146. *Cohen* v. *Santoianni*, 330 Mass. 187, 190. Having looked at the transcript, we conclude that if it were a proper report of the evidence, the result would be the same.

The transcript, if properly before us, would permit the following findings. Before the opening of school in September, 1957, the petitioner received a contract hiring her as a "permanent substitute teacher in Art" in the public schools of Quincy for two days in each week for the entire school year starting in September, 1957, and ending in June, 1958. Before April 15, 1958, the

---

[1] This is not a case like *Sulmonetti* v. *Hayes*, 347 Mass. 390, where the trial judge allowed a motion to record and report the evidence and the parties thereafter, pursuant to then Rule 2 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693 (now Rule 1:02 of this court, 351 Mass. 732, as amended, 353 Mass. 804), designated less than the complete transcript for presentation to this court on appeal. See *Everett* v. *Capitol Motor Transp. Co. Inc.* 330 Mass. 417, 420, and *Burlingham* v. *Worcester*, 351 Mass. 198, 199.

respondents gave the petitioner a written notice terminating her services at the end of the school year. This procedure was repeated for the next ten consecutive years, through the school year ending in June, 1968, with certain changes in the number of days involved in each contract. She was hired for two days a week for the first, second, fifth, sixth and seventh years, for two and one-half days a week for the fourth and eighth years, and for three days a week for the third, ninth, tenth and eleventh years. Her compensation in each of those years was computed on the basis of the pay of a regular teacher, but prorated to the number of days for which she was hired. Despite her title as a "permanent substitute" the petitioner was not filling in for any absent teacher.

The petitioner received no contract for the school year starting in September, 1968. Nevertheless, she reported to her former school at the opening of school in September but the respondents did not permit her to work. The respondents contend that the petitioner had not attained tenure under G. L. c. 71, § 41, and therefore they did not comply with the provisions of G. L. c. 71, § 42, governing the dismissal of tenured school teachers. They raise no question about the petitioner's qualifications or about the adequacy of her performance as a teacher.

General Laws c. 71, § 41, as in effect in 1968, provided that "[e]very school committee, in electing a teacher . . . who has served in its public schools for the three previous consecutive school years, . . . shall employ him to serve at its discretion." Section 42, as then in effect, prescribed the procedure to be followed in the dismissal of a teacher thus serving at discretion. It required (a) a two-thirds vote of the whole school committee, (b) a notice to the teacher of the committee's intention to take such a vote, the notice to be given at least thirty days before the meeting at which the vote was to be taken, (c) furnishing the teacher with a written charge of the cause or causes for which his dismissal was proposed, if the teacher so requested, (d) a hearing before the commit-

tee if the teacher so requested, (e) a recommendation of the superintendent to the committee thereon, and (f) the substantiation of the charges.

In *Paquette* v. *Fall River*, 278 Mass. 172, 173–174, we said that the various sections of G. L. c. 71, relating to the employment of public school teachers "indicate the purpose of the General Court to cover the field of relations between teachers and school committees and not to leave operative general rules arising from implication which would govern the rights between independent parties," and we further said that the provisions of § 41 giving tenure to a teacher elected by the school committee after having served for three consecutive school years "are mandatory." In *Frye* v. *School Comm. of Leicester*, 300 Mass. 537, 538–539, we said that "[t]he clear purpose of G. L. (Ter. Ed.) c. 71, § 41, is to provide some degree of protection for the tenure of teachers who have served a probationary term of three consecutive school years and who are continued in employment thereafter."

There is no disagreement on any of the pertinent facts of this case. It is clear that the petitioner was hired to teach a specified number of days in each week of the entire school year for eleven consecutive school years ending in June, 1968, the number of days being two days a week for five of those years, two and one-half days a week for two of those years, and three days a week four of those years. The petitioner contends that she attained tenure under G. L. c. 71, § 41, because the school committee continued to employ her as a teacher after she had "served in its public schools for the three previous consecutive school years." She bases her contention on our decision in *Frye* v. *School Comm. of Leicester*, 300 Mass. 537. The respondents contend that the petitioner could not and did not attain tenure because she was only a part time teacher. They base their contention on our decision in *Nester* v. *School Comm. of Fall River*, 318 Mass. 538.

Although both the *Frye* and the *Nester* cases involved

part time teachers, there were differences in the terms of their hiring which this court held required opposite conclusions on the question of their tenure. In the *Frye* case the teacher in question had been hired for each of three consecutive school years to teach "regularly organized classes for three of the seven daily periods during that entire school year," and was then similarly hired for a fourth year. In the *Nester* case three of the teachers in question had been called in intermittently for two school years as substitutes for absent school teachers and had then taught a third year on a substantially full time basis. The school committee then voted to hire them as full time teachers for the next school year. We held that the part time teacher in the *Frye* case had attained tenure under G. L. c. 71, § 41, but that the intermittent substitute teachers in the *Nester* case had not.[2]

In the *Frye* case we said, at p. 540, that "the statute [G. L. c. 71, § 41] recognizes no separate classification of 'part time' teachers. The sole test mentioned in the statute is service 'for the three previous consecutive school years.'" In that case the teacher had been hired annually to teach for three-sevenths of each day of the several school years which formed the basis for tenure. In the present case the petitioner was hired annually to teach a specified portion of every week of each of eleven consecutive school years. Having held in the *Frye* case that regular and continuous part time teaching can constitute the basis for attaining tenure, there is no difference, for that purpose, between teaching a part of every school day and teaching at least the same or a greater part of the total time but concentrated in several days of each week for the entire school year.

---

[2] The *Nester* case involved a fourth teacher who had served as a substitute for absent teachers for 182 days in one school year, 178 days in the next school year, and full time in the next school year until she resigned about one month before the end of the year. While we said at pp. 542–543, that since "one hundred eighty days constitute a normal school year, her service for these [first two] years can be said to be regular and continuous," her resignation deprived her of the protection of the statutory tenure provisions.

If this case were before us on the broad review afforded by a report of the evidence, we would hold that it is controlled by our decision in the *Frye* case and that the petitioner attained tenure before the time the respondents sought to terminate her services, the exact year she attained tenure being immaterial for the purpose of this opinion. In doing so we would look to the substance of the relationship between the petitioner and the respondents and give to the petitioner the benefit of tenure intended by the statute, notwithstanding the respondents' use of the device of annual contracts and annual terminations of those contracts.

The record before us is not sufficient to permit a decision on the right of the petitioner to compensation for the period since the expiration of her last annual contract, and no decision thereon is intended by the conclusions reached above.

The order for judgment entered by the trial judge is affirmed.

*So ordered.*