PAUL F. FORTUNATO vs. KING PHILIP REGIONAL SCHOOL DISTRICT COMMITTEE & another.[1]

Norfolk. May 15, 1980. — July 2, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*School and School Committee*, Tenured personnel. *Words*, "School year."

The term "school year" as used in G. L. c. 71, § 41, is not restricted to that period of time during the year when public school teachers are engaged in actually teaching the students but emcompasses the period during which the teachers in a particular system are obligated by their contracts of employment to render service in both teaching and non-teaching capacities. [203-205]

A school librarian who had been employed by a school committee during four consecutive school years had not acquired tenure under the provisions of G. L. c. 71, §§ 38H and 41, where he had been employed for only 160 days of the 182 day school year during one of the years of his employment. [205-207]

CIVIL ACTION commenced in the Superior Court Department on April 18, 1979.

The case was heard by *Beaudreau, J.*

*David J. Barry, III,* for the plaintiff.

*James Goldberg* for the defendants.

GREANEY, J. This is an appeal by the plaintiff, a certified school librarian (G. L. c. 71, §§ 38G and 38H), from a judgment entered in the Superior Court in favor of the defendant school committee on his complaint for a declaratory judgment under G. L. c. 231A. The principal question presented for consideration is whether the plaintiff had acquired tenure at discretion under the provisions of G. L.

---

[1] The King Philip Regional School District was made a party to the action.

c. 71, § 38H,[2] inserted by St. 1965, c. 276, and § 41,[3] as amended through St. 1973, c. 847, § 6, at the time the school committee informed him that his position for the 1979-1980 school year had been abolished pursuant to a district-wide reorganization plan. If the plaintiff had acquired such tenure, the committee could dismiss him only by complying with the procedural requirements of G. L. c. 71, § 42,[4] as amended through St. 1972, c. 464, § 2, which were not observed.[5] *Nutter* v. *School Comm. of Lowell*, 5 Mass. App. Ct. 77, 79-82 (1977). The judge entered a declaration that "the plaintiff had not acquired tenure at discretion under G. L. c. 71, § 41, and [his] employment terminated [on] March 20, 1979." We affirm that judgment.

The parties stipulated facts which are dispositive of the question. The plaintiff was first employed as a high school librarian by the committee on October 8, 1975. The teachers had begun work at the high school on September 8, 1975; because of delays in the construction of and renovations to the high school building, however, the students did not start classes until September 29, 1975. (That same school year, the junior high school teachers began work on September 2, and their students commenced classes on

---

[2] "Every school librarian . . . appointed by a school committee shall acquire tenure in the school system of the city or town in which he is employed subject to the provisions of section forty-one, relating to tenure for teachers, and of sections forty-two and forty-three A, relating to dismissal, suspension and discharge and of appeals therefrom."

[3] "Every school committee, in electing a teacher who has served in its public schools for the three previous consecutive school years, . . . shall employ him to serve at its discretion . . . ."

[4] The statute reads in relevant part: "[A] teacher . . . employed at discretion under [§ 41] . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . ., insubordination or other good cause, nor unless [various procedural requirements have been followed]."

[5] General Laws c. 71, § 42B, makes the tenure and dismissal provisions set forth in the chapter expressly applicable to personnel employed by regional school district committees.

September 3.)  During the school year 1975-1976, the high school teachers worked and were paid on the basis of 182 days, while the students attended school for 165 days.  That year the plaintiff, who began work on October 8, worked a total of 160 days; his salary was pro-rated on the basis of working 160 out of 182 days.  G. L. c. 71, § 40, as amended through St. 1973, c. 52, § 15.[6]  He was thereafter employed by the committee during the full school years for 1976-1977, 1977-1978, and 1978-1979.  During his final year the title of his position was changed from that of high school librarian to "instruction-media center director," but his job description and substantive duties remained the same.  During that year, on March 20, 1979, the plaintiff was notified by the committee that commencing with the 1979-1980 school year, his position and a similar one at the junior high school would be consolidated into the single position of "district coordinator of instructional media centers," and that both former positions consequently would be abolished.

To acquire tenure, the plaintiff had to have served in the public schools "for the three previous consecutive school years."  G. L. c. 71, § 41.  The crucial year for determining the plaintiff's entitlement to tenure is the 1975-1976 school year, when he served in the position of a high school librarian for 160 out of the 182 days that the high school was open and his salary was pro-rated accordingly.  There is no question that he rendered professional services of a substantial character to the school district (see *Frye* v. *School Comm. of Leicester,* 300 Mass. 537, 540 [1938]), on a "regular and continuous" basis (*Nester* v. *School Comm. of Fall River,* 318 Mass. 538, 542-543 [1945]), during that school year.  However, in addition to these requirements, in order to acquire tenure he must establish that his service in the 1975-1976 school year was provided "for the entire period" (*Frye* v. *School Comm. of Leicester,* 300 Mass. at 540), or,

---

[6] The statute, as so amended, reads in relevant part: "The compensation paid to such teachers shall be deemed to be fully earned at the end of the school year, and proportionately earned during the school year."

as it is sometimes phrased, for "the period comprising a normal school year." *Nester* v. *School Comm. of Fall River,* 318 Mass. at 542. The plaintiff contends that the term "school year" as used in § 41 to calculate tenure is restricted to that period of time during the year when the public school teachers are engaged in actually teaching the students, i.e., in this instance, 165 days rather than the 182 days the high school was open and the teachers were required to be present. We do not accept that contention.

The term "school year" is not defined in G. L. c. 71 although it appears in several sections of the statute. See, e.g., G. L. c. 71, §§ 1, 4, 4A, 18, 21, 37B, 38G, 40 and 41. Since there is nothing in the context of any of these sections which indicates that the term has a different meaning within different sections of the same act, it is reasonable to assume that the term is intended to have the same meaning throughout. 2A Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1973). The term is used in c. 71, §§ 1, 4, and 4A, to refer to the time period in a particular school system (after the State Board of Education has determined the *minimum* number of days) during which the schools must be kept open; in § 40, to set the period when the teachers' salaries are deemed earned ("fully earned at the end of the school year, and proportionately earned during the school year"); in § 41, to establish the period of service necessary in the ordinary case to acquire tenure ("three previous consecutive school years") and the date by which a probationary teacher must be notified of the nonrenewal of his or her contract (on or before April 15 "whenever such person is not to be employed for the following school year"). None of the foregoing sections of the statute, or any of the other sections of c. 71 where the term appears (without laboriously parsing each one), supports the notion that the school year encompasses only the period when actual teaching occurs. Section 40 makes it plain that the teachers' rights to a salary are based upon the satisfactory performance of a contract for services over the entire school year considered as a definite period of time; when read in con-

junction with § 40, then, "school year" in § 41 must be read as meaning the entire school year for purposes of determining tenure rights. The services include both teaching and nonteaching duties,[7] and the period is the same for all the teachers in the system, irrespective of peculiar conditions prevailing at one school. We hold that the term school year, in so far as it applies to full-time teachers, teachers rendering regular part-time service (*Ryan* v. *Superintendent of Schs. of Quincy*, 363 Mass. 731, 738-739 1973]),[8] and other school personnel subject to the tenure provisions of § 41, is the period during which the teachers in the particular system are obligated by their contract(s) of employment with the school committee to render services in the public schools, in both teaching and nonteaching capacities.[9] Typically, this will be a minimum of 180

[7] It is common knowledge that nonteaching duties expected of teachers in public schools often include among other things such assignments as supervision of extracurricular activities, presence at workshops and educational programs, in-school preparation time, and attendance at the school before the students arrive to prepare for opening and after the students leave in the summer to close the schools.

[8] Service by teachers which is irregular and intermittent does not qualify for tenure even if performed under a contract. *Nester* v. *School Comm. of Fall River*, 318 Mass. at 541-542; *Brodie* v. *School Comm. of Easton*, 3 Mass. App. Ct. 141, 143-144 (1975).

[9] The illogic of the plaintiff's position becomes apparent when we consider the fact that he worked the two days in June after the students completed classes, along with the rest of the staff, and was paid a proportional share of his full salary for those days. G. L. c. 71, § 40. Clearly he would not contend that for salary purposes the school year ended two days earlier when the students completed classes, since such a conclusion would have required him to donate two days of service without pay to the school committee. Similarly, the beginning of the school year had to be the first day the teachers worked, and not the first day of student attendance, so that a teacher who left the system before completion of the year would be entitled to salary for those days. Moreover, the plaintiff's approach would require the school committee to treat him differently from the junior high school librarian for purposes of tenure, because the students attended classes at the junior high school for more days than the high school students, and because the hours served per day or week are not relevant for tenure purposes. See *Ryan* v. *Superintendent of Schs. of Quincy*, 363 Mass. at 738-739.

days;[10] in the case of the defendant school district in the 1975-1976 school year it was 182 days.

The cases that have dealt with this aspect of tenure have implicitly based their holdings on this view of the statute. In *Frye* v. *School Comm. of Leicester,* 300 Mass. at 540, a teacher was held to have attained tenure who had been continuously employed "for the entire period," between September and June, of the three previous consecutive school years. In *Nester* v. *School Comm. of Fall River,* 318 Mass. at 542-543, the "normal school year" was said to be 180 days, and the claims by three teachers that they had acquired tenure were rejected because in one year they had served only approximately one half the period comprising a normal school year. In *Ryan* v. *Superintendent of Schs. of Quincy,* 363 Mass. at 736-737, the teacher was held to have acquired tenure based on eleven consecutive years of regular part-time service between September and June. *Brodie* v. *School Comm. of Easton,* 3 Mass. App. Ct. 141, 143 (1975), held that the plaintiff's 136 days of service in one year was

[10] Despite the reorganization of the Department of Education in 1965 by St. 1965, c. 572, which provided that schools are now to be kept open the number of days required by the Board of Education (see G. L. c. 15, § 1G, inserted by St. 1965, c. 572, § 2, stating that "[t]he board shall establish the minimum length for a school day and the minimum number of days in the school year"), it was not intended thereby to shorten the number of days in a normal school year. See Report of the Special Commission Established to Make an Investigation and Study Relative to Improving and Extending Educational Facilities in the Commonwealth, 1965 House Doc. 3300, at 33 (1965) (recommending that the board establish a school year of 185 days, while also recommending the amendment in the form in which it now appears). The 180 days previously specified by statute (see G. L. c. 71, § 4A, as in effect prior to amendment by St. 1965, c. 572, § 16, which required schools to be open for 180 days) remains the normal minimum period for a school year. See 603 Code Mass. Regs. § 27.01 (1978), which provides that "[a]ll school districts shall schedule a minimum of 180 days per year," while allowing student attendance to be calculated either upon this figure or upon an hourly figure which varies for elementary, secondary, or vocational schools. See also G. L. c. 70, § 2(4), as appearing in St. 1978, c. 367, § 70B, which utilizes the 180-day period to calculate the number of "full-time equivalent pupil[s]" for purposes of computing State aid to the public schools.

considerably less than the period comprising a normal school year and that he was therefore not entitled to tenure. In *Woodward* v. *School Comm. of Sharon,* 5 Mass. App. Ct. 84, 88 (1977), the court considered "the fact that the plaintiff [had] worked 181 of the 182 school days of the [school] year" as indicative of regular and continuous service for one of the three years required. Minor deviations from the norm are permitted by the cases (see, e.g., *Nester,* 318 Mass. at 542-543 [two days]; *Woodward,* 5 Mass. App. Ct. at 88 [one day]); and absences which are excused or sanctioned by the contract or by the school committee would not weigh against the teacher's entitlement to tenure. The only other recent case revealed by our search is *Brophy* v. *School Comm. of Worcester,* 6 Mass. App. Ct. 731, 733, 736 (1978), in which the question of service by the teachers for the entire school year was not raised by the committee. The plaintiff's reliance on the *Frye* and *Ryan* decisions, *supra,* for the proposition that actual teaching time should be used in calculating the school year is thus misplaced. Both cases deal with the distinction between regular part-time service (which qualifies towards tenure) and irregular intermittent service (which does not); both cases, moreover, point out explicitly that the teachers' service had been "for the entire period" (*Frye,* 300 Mass. at 540), or over the "entire school year" (*Ryan,* 363 Mass. at 738, 739 & n.2). Additionally, the *Ryan* decision rejected the use of annual one-year contracts and termination notices at the end of every year during and after the tenure year as a device to circumvent the rights conferred by § 41.[11] *Id.* at 740.

For these reasons it follows that the plaintiff's service in the 1975-1976 school year occupied "a substantial period of time in [that year], but it was considerably less than the

---

[11] The recurrence of the question in the decisions discussed above suggests as a counseling point that a school committee hiring a teacher who will eventually come up for tenure for a period of service less than the period comprised in a normal school year would be well advised to clarify in its contract with the teacher whether the year in question will be considered towards the attainment of rights under § 41.

period comprising a normal school year and does not in our opinion constitute the regular and continuous employment that the statute contemplates." *Nester* v. *School Comm. of Fall River,* 318 Mass. at 542. *Brodie* v. *School Comm. of Easton,* 3 Mass. App. Ct. at 143.

*Judgment affirmed.*