RUTH MATTHEWS vs. SCHOOL COMMITTEE OF BEDFORD
& another.[1]

Middlesex.  February 7, 1986. — June 19, 1986.

Present: GREANEY, C.J., WARNER, & FINE, JJ.

*School and School Committee,* Tenure of personnel.

A teacher employed by a school committee did not acquire tenure under
G. L. c. 71, § 41, on the basis of service for three consecutive school
years, where, in the third school year of her employment, she worked
only the first ninety-nine days and was on voluntary, unpaid child rearing
leave for the remaining eighty-four days of the 183-day school year.
[376-378]


CIVIL ACTION commenced in the Superior Court Department
on May 6, 1980.

The case was heard by *Joseph S. Mitchell, Jr.*, J.

*Charles M. Healey, III,* for the plaintiff.

*Diana S. Gondek* for the defendants.

WARNER, J. This action for declaratory relief (G. L.
c. 231A) was presented to a Superior Court judge on a state-
ment of agreed facts. The narrow question posed was whether
the plaintiff had acquired tenure as a teacher in the Bedford
public school system at the end of the 1976-1977 school year.
From a judgment declaring that the plaintiff was not tenured
at that time, the plaintiff appeals.

The controversy arises out of the following sequence of
events. The plaintiff, a home economics teacher, was first
employed by the Bedford school committee for the 1974-1975
school year. She was reappointed by the school committee for
the 1975-1976 and 1976-1977 school years. In 1974-1975 and
1975-1976, the plaintiff taught for full school years. In Feb-
ruary, 1977, she requested a child rearing leave, available

[1] The superintendent of schools of Bedford.

under the collective bargaining agreement to teachers who were adopting a child.[2] The school committee approved the plaintiff's request on February 15, 1977. The child rearing leave began on February 16, 1977, and the plaintiff was scheduled to return in September, 1978. During 1976-1977, the plaintiff taught for ninety-nine days. In April 1977, the school committee voted to reappoint the plaintiff for the 1977-1978 school year.[3]

For the entire 1977-1978 school year, the plaintiff was on unpaid child rearing leave. On April 7, 1978, the superintendent of schools sent to the plaintiff a letter notifying her that her contract would not be renewed for the 1978-1979 school year. However, on June 6, 1978, the school committee approved the reappointment of the plaintiff at the appropriate step level on the salary scale. Later in June, the plaintiff wrote to the superintendent, returning her signed contract for the 1978-1979 school year, informing him that she was pregnant, and requesting a clarification of her tenure status. The superintendent advised the plaintiff that she was not eligible for tenure because she had not completed the required three-year term of service. In July, 1978, the plaintiff requested maternity leave for the fall semester of the 1978-1979 school year. The collective bargaining agreement provided for unpaid maternity leave and, in August, the school committee approved the plaintiff's request. The plaintiff returned to teaching on January 26, 1979. During the 1978-1979 school year, the plaintiff taught for ninety-one school days.

The plaintiff was notified on April 4, 1979, that her contract would not be renewed for the 1979-1980 school year because of declining student enrollment. Subsequently, the school committee determined that it was not necessary to eliminate the plaintiff's position and voted to reappoint her for 1979-1980. The plaintiff taught for the entire 1979-1980 school year. On April 8, 1980, the superintendent informed the plaintiff that

[2] The collective bargaining agreement provided that leave would be allowed without pay and would begin at the time of adoption. The teacher would indicate a termination date in his request for child rearing leave; however, the teacher would be required to return to teaching no later than the beginning of the second school year following the adoption.

[3] Without this reappointment and the one for 1978-1979, the plaintiff's leaves of absence for child rearing and maternity would have been meaningless.

her contract would not be renewed for the 1980-1981 school year because of declining student enrollment.[4]

1. The operation of tenure is controlled by G. L. c. 71, § 41, and its provisions are mandatory. *Paquette* v. *Fall River,* 278 Mass. 172, 174 (1932). *Ripley* v. *School Comm. of Norwood,* 389 Mass. 610, 613 (1983). Section 41, as amended by St. 1973, c. 847, § 6, provides that "[e]very school committee, in electing a teacher who has served in its public schools for the three previous school years, shall employ him to serve at its discretion . . . . A teacher not serving at discretion shall be notified in writing on or before April fifteenth whenever such person is not to be employed for the following school year. Unless said notice is given as herein provided, a teacher not serving at discretion shall be deemed to be appointed for the following school year."[5] See *Farrington* v. *School Comm. of Cambridge,* 382 Mass. 324, 326 (1981). "Serving at discretion is serving under tenure. The purpose of this statute 'is to provide some degree of protection for the tenure of teachers who have served a probationary term of three consecutive school years and who are continued in employment thereafter.'" *Rantz* v. *School Comm. of Peabody,* 396 Mass. 383, 385 (1985), quoting from *Frye* v. *School Comm. of Leicester,* 300 Mass. 537, 539 (1938). The "effect [of the notice provision] is to relieve the school committee of the burden of notifying every nontenure teacher of his reappointment, and also to afford those teachers who are not reappointed adequate opportunity to make plans." *DeCanio* v. *School Comm. of Boston,* 358 Mass. 116, 120 (1970).

The plaintiff argues that as she was not given written notice by the school committee prior to April 15, 1977, that she was

_____

[4] The school committee took the position that the plaintiff was not tenured, and she was not afforded a hearing. For the rights of tenured teachers dismissed because of declining enrollment, see G. L. c. 71, § 42, as amended by St. 1985, c. 188, § 18; *Martin* v. *School Comm. of Natick,* 395 Mass. 461, 464-467 (1985).

[5] The statute also provides that a "school committee may elect a teacher who has served in its schools for not less than one school year to serve at [its] discretion." G. L. c. 71, § 41. The school committee here had expressly declined to exercise this option.

not to be employed for the school year 1977-1978,[6] she acquired tenure by operation of law. The argument fails to take into account the facts that (1) the plaintiff taught for only ninety-nine days of the 183 days in the 1976-1977 school year and (2) her unpaid child rearing leave of absence was to, and did, extend from February 16, 1977, to September of 1978.[7]

In order to establish tenure at the end of the 1976-1977 school year, it is not enough that the plaintiff show the lack of notice of reemployment for the 1977-1978 school year. She must also show that at the end of the 1976-1977 year she had taught for three full school years. We think this aspect of the case is controlled by our decision in *Fortunato* v. *King Philip Regional Sch. Dist. Comm.*, 10 Mass. App. Ct. 200, 204 (1980), where we said that the term "school year" in G. L. c. 71, § 41, means "the entire school year for purposes of determining tenure rights[,] . . . the period during which the teachers in the particular system are obligated by their contract(s) of employment with the school committee to render services in the public schools, in both teaching and nonteaching capacities" (footnote omitted). Applying that definition, we held that the plaintiff, a school librarian, had not worked the three consecutive years required for appointment as tenured because in his first school term, the plaintiff worked 160 days in the 182 day school year. *Id.* at 202. "There is no question that [the plaintiff] rendered professional services of a substantial character to the school district (see *Frye* v. *School Comm. of Leicester,* 300 Mass. 537, 540 [1938]), on a 'regular and continuous' basis (*Nester* v. *School Comm. of Fall River,* 318 Mass. 538, 542-543 [1945]), during that school year. However, in addition to these requirements, in order to acquire tenure he must estab-

---

[6] Indeed, the school committee, at a meeting on April 5, 1977, voted to reappoint the plaintiff for the 1977-1978 school year, knowing that she would be on unpaid child rearing leave for the entire period. See note 3, *supra*. At the same meeting the superintendent recommended that the plaintiff's name be removed from the tenure appointment list, as she had not completed three consecutive years of teaching.

[7] As noted, the plaintiff did not return to her teaching duties until January 26, 1979, after a maternity leave which began on September 6, 1978.

blish that his service in [his first year] was provided 'for the entire period' (*Frye* v. *School Comm. of Leicester,* 300 Mass. at 540), or, as it is sometimes phrased, for 'the period comprising a normal school year.' *Nester* v. *School Comm. of Fall River,* 318 Mass. at 542." *Id.* at 202-203. See *Brodie* v. *School Comm. of Easton,* 3 Mass. App. Ct. 141 (1975). Compare *Ryan* v. *Superintendent of Schs. of Quincy,* 363 Mass. 731, 736-737 (1973); *Woodward* v. *School Comm. of Sharon,* 5 Mass. App. Ct. 84, 88 (1977).

Here, the plaintiff taught for two full school years. Then in 1976-1977, she taught for ninety-nine days out of the 183 day school year.[8] The time spent from February 16, 1977, to the end of the school year (eighty-four days) on extended voluntary, unpaid leave is not to be counted in the computation of the plaintiff's tenure status at the end of the 1976-1977 school year.[9] See *Nester* v. *School Comm. of Fall River,* 318 Mass. at 543 ("The tender and acceptance of this [voluntary] resignation, more than a month before the end of the school year, interrupted the probationary period required by the statute and deprived the petitioner of its protection"). Cf. *Solomon* v. *School Comm. of Boston,* 395 Mass. 12, 19 (1985) ("Because maternity leave [taken pursuant to G. L. c. 149, § 105D] cannot be included in the computation of tenure, the year in which such leave is taken is not a complete school year").[10]

---

[8] The plaintiff's contract was for the school year 1976-1977, her term to begin on September 1, 1976, and to conclude on the date set by the school committee.

[9] The dictum in *Fortunato* v. *King Philip Regional Sch. Dist. Comm., supra* at 206, that "absences which are excused or sanctioned by the contract or by the school committee would not weigh against the teacher's entitlement to tenure" has been confined in application to consideration of the consecutiveness of a teacher's service. *Solomon* v. *School Comm. of Boston,* 395 Mass. 12, 18-19 (1985). The plaintiff's absences in this case cannot be considered "[m]inor deviations from the norm [which] are permitted by the cases" (citations omitted). *Fortunato, supra.*

[10] The plaintiff makes no argument, nor could she, that the relevant collective bargaining agreements gave her any greater or additional benefits (except for the length of permissible leaves) than those provided under G. L. c. 149, § 105D.

2. The plaintiff's complaint asked for a declaration that the plaintiff was tenured at the end of the 1976-1977 school year because the school committee failed to give her notice prior to April 15, 1977, of an intent not to reemploy her for the school year 1978-1979. The plaintiff did not allege any later time at which tenure might have been acquired. The judgment declaring the rights of the parties was appropriately confined to the one issue presented. On appeal, the plaintiff in glancing references suggests that she might have acquired tenure by counting as a full year the ninety-nine days she served in 1976-1977 with the ninety-one days she taught almost two years later in the second semester of the 1978-1979 school year.[11] The question of combining separate periods of service to make up a full school year was left open as it relates to a maternity leave taken under G. L. c. 149, § 105D, by *Solomon v. School Comm. of Boston,* 395 Mass. at 19. We do not consider the issue as it was not before the Superior Court, see *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.,* 369 Mass. 562, 565 (1976); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Commn.,* 386 Mass. 64, 73 (1982), and is not advanced in the plaintiff's brief with anything that can be considered appellate argument. See Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975); *Nolan* v. *Parker,* 15 Mass. App. Ct. 475, 480 (1983), and cases cited. Finally, we do not consider the question of unlawful sex discrimination raised for the first time on appeal. But see *Solomon* v. *School Comm. of Boston,* 395 Mass. 12 (1985).

*Judgment affirmed.*

---

[11] When the plaintiff was given notice on April 8, 1980, that her contract would not be renewed for the 1980-1981 school year, she was in her third full year of teaching. See G. L. c. 71, § 41.