APPEALS COURT 
 
 PAULINE CHALOFF vs. WESTWOOD PUBLIC SCHOOLS

 
 Docket:
 23-P-693
 
 
 Dates:
 April 2, 2024 – October 25, 2024
 
 
 Present:
 Meade, Englander, & Hodgens, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 School and School Committee, Maternity leave, Professional teacher status, Tenure of personnel, Arbitration. Arbitration, Confirmation of award. Contract, School teacher. Public Policy.
 
 

       Civil action commenced in the Superior
Court Department on August 10, 2021.
      The case was heard by Maynard M.
Kirpalani, J., on motions for judgment on the pleadings. 
      Daniel S. O'Connor for the plaintiff.
      James M. Pender (Jacob J. Thaler also
present) for the defendant.
      HODGENS, J.  Teaching for four consecutive school years,
the plaintiff, Pauline Chaloff (teacher), worked for the defendant, Westwood
Public Schools (Westwood).  During her
second year, the teacher took fifty-six days of parental leave pursuant to
G. L. c. 149, § 105D.  In the
spring of the teacher's third school year, Westwood notified her that because
her second year was incomplete, she needed to work an additional school year to
be eligible for "professional teacher status" under G. L.
c. 71, § 41 (PTS or tenure). 
When Westwood terminated her employment at the end of the fourth school
year, the teacher asserted that she had taught the requisite three consecutive
school years to secure tenure and filed a petition for arbitration.  The arbitrator agreed with Westwood.  A Superior Court judge confirmed the award
following cross motions for judgment on the pleadings.  We reverse.
      Background.  The parties do not dispute the facts found by
the arbitrator.  Westwood hired the
teacher through a one-year contract for the 2016-2017 school year.  The teacher joined the teacher's union.  Upon completion of the first school year, the
teacher received a second contract for the 2017-2018 school year.  The teacher submitted a request for maternity
leave to be taken during the fall of that second school year, and Westwood
granted the leave in accordance with G. L. c. 149, § 105D.  That statute guarantees that such leave
"shall not affect" the employee's "seniority, length of service
credit" or "any other advantages or rights of employment."  G. L. c. 149,
§ 105D (d).  The leave time
itself, however, "shall not be included, when applicable, in the
computation of the benefits, rights and advantages."  Id. 
The teacher went on maternity leave for fifty-six days and returned to
work.  She completed that second school
year, and Westwood hired her under a third contract for the 2018-2019 school
year.  
      By the early spring of 2019, the teacher
began to approach three years of teaching that would normally be a critical
point for securing tenure under G. L. c. 71, § 41.  A person who completes "three previous
consecutive school years" of teaching "shall be entitled to
professional teacher status" unless notified by June 15 that employment
will not be offered for the following school year.  Id.  As
the phrase implies, "professional teacher status" is a significant
career milestone that elevates a teacher from "at will" status and
carries procedural and substantive safeguards from adverse employment
actions.  See, e.g., G. L.
c. 71, § 42.  
      On April 12, 2019, the teacher met with
her school's principal who "informed her that because she had taken a
[maternity] leave of absence during the 2017-18 school year, she would not be
receiving PTS and that she would need to work another year in non-PTS status
before a decision would be made." 
Later that same day, the assistant superintendent of schools told the teacher
that "requiring an extra year in non-professional teacher status was
regular practice at the Westwood Public Schools for teachers whose employment
had a significant interruption."
      After that meeting, through a fourth
contract, Westwood extended her employment for the 2019-2020 school year.  The teacher worked throughout that school
year and signed an "educator growth plan" in which she acknowledged
that she was "in non-professional teacher status."  On May 15, 2020, Westwood notified the
teacher that she would not be hired as a teacher for the next school year.  This notification ended the teacher's
employment with Westwood.
      Dissatisfied with Westwood's action, the
teacher petitioned the Department of Elementary and Secondary Education and
requested arbitration.  See G. L.
c. 71, § 42 ("teacher with professional teacher status may seek
review of a dismissal decision . . . by filing a petition for
arbitration").  During arbitration,
she argued that her fifty-six days of maternity leave should not require an
additional year of employment to qualify for PTS.  An arbitrator concluded that the teacher did
not attain PTS prior to being notified on May 15, 2020, that her contract would
not be renewed.  The teacher then filed a
complaint in the Superior Court seeking to vacate the arbitration decision, and
Westwood filed an answer and counterclaim seeking to confirm the decision.  On cross motions for judgment on the
pleadings, a judge allowed Westwood's motion and denied the teacher's motion.  The teacher appealed.
      Discussion.  A reviewing court generally accords deference
to the decision of an arbitrator in a collective bargaining dispute governed by
the provisions of G. L. c. 150C, §§ 1-16.  See School Comm. of Lexington v. Zagaeski,
469 Mass. 104, 110 (2014). 
"Although arbitration decisions are given great deference, they are
not sacrosanct."  Boston v. Boston
Police Patrolmen's Ass'n, 443 Mass. 813, 823 (2005) (Boston).  "Where the determinations to be made are
primarily issues of public law, the arbitrator possesses no special expertise"
that merits such deferential review. 
School Comm. of Hanover v. Curry, 3 Mass. App. Ct. 151, 156 (1975),
S.C., 369 Mass. 683 (1976). 
"[C]ourts are as well, if not better, positioned to interpret the
'law of the land' in the form of the statutes of the Commonwealth. . . .  Therefore, judicial review of the
arbitrator's interpretation of the authorizing statute, particularly regarding
the scope of the arbitrator's authority under the statute, is 'broader and less
deferential' than in cases of judicial review of an arbitrator's decision
arising from the interpretation of a private agreement."  Zagaeski, supra at 112, quoting Atwater v.
Commissioner of Educ., 460 Mass. 844, 856-857 (2011).  "[A] reviewing court must vacate an
arbitration award under the circumstances set forth in G. L. c. 150C,
§ 11 (a)," Zagaeski, supra at 111, including if
"arbitrators exceeded their powers," G. L. c. 150C,
§ 11 (a) (3), by rendering an award that violates public policy,
Boston v. Boston Police Patrolmen's Ass'n, 74 Mass. App. Ct. 379, 380-381
(2009).  On de novo review of the
judgment on the pleadings, id. at 381, we conclude that the arbitration award
must be vacated because it penalized the teacher for taking parental leave under
G. L. c. 149, § 105D (protected leave).
      We are presented here with a question of
law that was expressly left open in Solomon v. School Comm. of Boston, 395
Mass. 12, 19 (1985).  In that case, after
working during four school years, a teacher claimed that she secured
tenure.  See id. at 14-15.  A Superior Court judge rejected her claim of
tenure because the teacher's protected leave during the third school year was a
significant interruption in the three "consecutive school years"
required for tenure eligibility under G. L. c. 71, § 41.  Solomon, supra at 13-14.  The Supreme Judicial Court disagreed and
concluded that "[a] teacher who exercises her constitutionally protected
choice to have a child during her first three years of service need not
recommence counting three consecutive years of service" (citation
omitted).  Id. at 18.  Protected leave "does not interrupt the
consecutiveness of [a teacher's] service" for the purpose of obtaining
tenure.  Id. at 19.  With the issue of annual continuity resolved,
the court "[left] open the question whether such teacher must serve an
entire additional year to compensate for the incomplete school year"
caused by taking protected leave. 
Id.  See Plymouth Pub. Sch. v.
Education Ass'n of Plymouth & Carver, 89 Mass. App. Ct. 643, 650 (2016)
(declining to address question left open in Solomon where policy arguments were
"unripe at this juncture"); Matthews v. School Comm. of Bedford, 22
Mass. App. Ct. 374, 379 (1986) (declining to address "combining separate
periods of service to make up a full school year" as issue was not raised
below).  
      The open question arises from the language
of G. L. c. 149, § 105D. 
According to that statute, protected leave "shall not affect"
the employee's "seniority, length of service credit," or "any
other advantages or rights of employment." 
G. L. c. 149, § 105D (d). 
Such leave, however, "shall not be included, when applicable, in
the computation of the benefits, rights and advantages."  Id.  In
other words, "[t]he time spent on [protected] leave may not be counted towards
the amount of time required for tenure." 
Solomon, 395 Mass. at 18.
      At issue here are the fifty-six days of
protected leave that must be excluded from the PTS calculation.  The teacher contends that she ultimately
achieved PTS by working fifty-six days into the fourth school year, at which
point she had worked the "three consecutive school years" required by
the statute and had not been notified by the prior June 15 that employment
would not be offered.  G. L.
c. 71, § 41.  Westwood contends
that the additional fifty-six days worked in the fourth school year were
insufficient to bridge the gap created by her protected leave, because Westwood
required an evaluation of teacher performance based on a "complete"
school year of at least 180 days, and the teacher had not worked for
"three previous consecutive school years" as required by G. L.
c. 71, § 41.  Because it
disregards the teacher's actual "length of service credit" that must
not be affected by protected leave, Westwood's formula for calculating PTS
violates G. L. c. 149, § 105D. 
Therefore, the judgments must be reversed, and the arbitrator's decision
must be vacated.  
      Westwood's view is inconsistent with the
plain language of G. L. c. 149, § 105D.  An employee taking protected leave
"shall be restored to the employee's previous, or a similar, position with
the same status, pay, length of service credit and seniority, wherever
applicable, as of the date of the leave." 
G. L. c. 149, § 105D (b). 
Here, instead of restoring the teacher to her previous status, including
length of service credit, Westwood disregarded the teacher's actual length of
service by informing her during her third year that she "would need to
work another year in non-PTS status before a decision would be made."  By requiring an additional school year and
thereby deducting from the length of service credit all days worked during the
year in which leave had been taken, Westwood penalized the teacher for taking
protected leave.  The action taken by
Westwood is inconsistent with the language of G. L. c. 149, § 105D,
and cannot stand.
      Westwood's position is also inconsistent
with the evident public policy reflected in G. L. c. 149,
§ 105D.  The statute, inserted by
St. 1972, c. 790, § 1 ("An Act requiring employers to grant maternity
leave to certain employees"), originally excused work absences by mothers
during an eight-week period "for the purpose of giving birth."  Since then, the reach of the statute has been
significantly expanded beyond protecting absences taken by birth mothers to
also include absences taken for adoptions (St. 1984, c. 423), adoptions of
persons with disabilities (St. 1989, c. 318), and parental leave (St. 2014, c.
484, § 1).  Failure to restore a
person taking protected leave to a prior position may also constitute an
"unlawful practice" under the Commonwealth's antidiscrimination
law.  See St. 1972, c. 790, § 2
(amending G. L. c. 151B).  It
is also an unlawful practice for an employer "to impose any other penalty
as a result of a parental leave of absence."  G. L. c. 151B,
§ 4 (11A).  The obvious public
policy, expressed in such various legislation over many years, is to protect
significant interests of employees as well as their families.  Put simply, instead of having to rely on the
mercy and goodwill of employers in various life circumstances involving
parenting, employees "are afforded rights" under G. L. c. 149,
§ 105D, when they are absent from work. 
Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 497 (2010).  One of the most consequential rights is that
an employee's length of service is safeguarded when the employee takes leave
under the statute.  Here, by requiring an
extra year of teaching for taking fifty-six days of protected leave, Westwood
violated a significant public policy by failing to safeguard the teacher's
length of service credit.
      Subjecting other teachers similarly
situated to the same fate does not aid Westwood's position.  According to the assistant superintendent,
"requiring an extra year in non-professional teacher status was regular
practice at the Westwood Public Schools for teachers whose employment had a
significant interruption."  Although
it may have been a "regular practice" to require an extra year, the
teacher's excused absence here was not merely a "significant
interruption" –- it was protected by law. 
It is well settled that "excused" absences do "not weigh
against the teacher's entitlement to tenure."  Fortunato v. King Philip Regional Sch. Dist.
Comm., 10 Mass. App. Ct. 200, 206 (1980). 
Beyond the plain language of G. L. c. 149, § 105D,
"'acting to penalize the pregnant teacher for deciding to bear a child,'
put[s] a heavy burden on the 'freedom of personal choice in matters of marriage
and family life [that] is one of the liberties protected by the Due Process
Clause.'"  Black v. School Comm. of
Malden, 365 Mass. 197, 206 (1974), quoting Cleveland Bd. of Educ. v. LaFleur,
414 U.S. 632, 639-640 (1974).  Our law
has evolved so that teachers do not have to choose between becoming parents or
securing tenure.  
      Westwood's position is also inconsistent
with PTS eligibility under G. L. c. 71, § 41.  The purpose of the statute "is to
provide some degree of protection for the tenure of teachers who have served a
probationary term of three consecutive school years and who are continued in
employment thereafter."  Frye v.
School Comm. Of Leicester, 300 Mass. 537, 538-539 (1938).  "The sole test mentioned in the statute
is service 'for the three previous consecutive school years.'"  Id. at 540, quoting G. L. c. 71,
§ 41.  There is nothing in
G. L. c. 71, § 41, that gives Westwood the authority to change
the probationary period to four consecutive school years or any other period
that suits its evaluation purposes. 
Indeed, the "terms of this section are mandatory."  Nester v. School Comm. of Fall River, 318
Mass. 538, 541 (1945).  Once the
conditions of the statute are satisfied, the teacher is "entitled" to
PTS.  G. L. c. 71,
§ 41.  We also do not view the
phrase "school years" in G. L. c. 71, § 41, as a prohibition
against aggregating days in service. 
Requiring a nontenured teacher to work an additional "complete
school year" anytime he or she properly takes protected leave would cause
the same "harsh result" that the Supreme Judicial Court sought to
avoid in Solomon, 395 Mass. at 18-19.  We
are bound to "construe G. L. c. 149, § 105D, and G. L.
c. 71, § 41, in a manner that gives reasonable effect to both."  Solomon, supra at 18.  
      Here, the teacher satisfied the sole test
for tenure under G. L. c. 71, § 41, and was entitled to
PTS.  When she entered her fourth school
year working for Westwood, the teacher was just fifty-six days short of the
necessary three years of "regular and continuous employment."  Nester, 318 Mass. at 542.  After working fifty-six days in that fourth
year, the teacher accumulated the necessary length of service credit of
"three previous consecutive school years" to be "entitled"
to PTS.  G. L. c. 71,
§ 41.  We must look to the
"substance of the relationship between" the teacher and Westwood and
"give to the [teacher] the benefit of tenure intended by the
statute."  Ryan v. Superintendent of
Sch. of Quincy, 363 Mass. 731, 740 (1973). 
      Westwood protests that administrative
difficulties would result from PTS based on anything but "full school year
increments."  Westwood contends that
without relying on full school year increments administrators would be required
to "track the exact duration of each non-PTS educator's leave of
absence" and would "have to make consequential personnel
determinations in the middle of a school year."  While a teacher invoking protected leave may
create challenges for school officials concerned with classroom continuity and
timely evaluations, administrative convenience cannot trump the statutory right
to take parental leave, nor is convenience a particularly compelling excuse for
discriminating against persons taking maternity leave.  See, e.g., Black, 365 Mass. at 207
(administrative convenience derived from "rules that avoided case-by-case
determination was not weighty enough to validate an otherwise prejudicial
scheme").
      We disagree with Westwood's further
contention that PTS based on partial school years would undermine "the
purpose, structure, and effectiveness of the education evaluation system"
that is premised on full school years. 
Specifically, Westwood points to the "evaluation cycle"
outlined in 603 Code Mass. Regs. § 35.06 (2017).  That regulation is not as rigid as Westwood
represents.  To the contrary, the
regulation describes general principles for an evaluation cycle of teachers and
allows school committees to develop systems "consistent with" those
principles.  603 Code Mass. Regs.
§ 35.06(1).  Indeed, Westwood
acknowledges in its brief that it has developed its own evaluation cycle in
accordance with those principles.  In any
event, because "an administrative agency has no authority to promulgate
rules or regulations that conflict with the statutes," Massachusetts Mun.
Wholesale Elec. Co. v. Massachusetts Energy Facilities Siting Council, 411
Mass. 183, 194 (1991), the regulation at issue must take protected leave into
account.  For the same reason, any
evaluation system developed by Westwood must consider the possibility that
teachers will be taking protected leave and must accommodate that leave in its
evaluation process.
      Conclusion.  "This case presents one of those 'rare
instances' in which an arbitrator's award must be vacated as contrary to 'an
explicit, well-defined, and dominant public policy.'" Boston, 443 Mass. at
813–814, quoting Eastern Associated Coal Corp. v. United Mine Workers of Am.,
Dist. 17, 531 U.S. 57, 62-63 (2000).  We
are not dealing with an arbitrator who has been asked "to interpret the
meaning" of terms in a collective bargaining agreement.  Eastern Associated Coal Corp., supra at
61.  Notably, the arbitrator's decision
"does not 'dra[w] its essence'" from the collective bargaining
agreement that was neither referenced in any proceedings nor included in the
record appendix.  W.R. Grace & Co. v.
Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic
Workers of Am., 461 U.S. 757, 764 (1983), quoting United Steelworkers of Am. v.
Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).  Instead, we are dealing with an arbitrator
who answered a narrow question of law that was expressly left unanswered in
prior appellate decisions.  See Solomon,
395 Mass. at 19; Plymouth Pub. Sch., 89 Mass. App. Ct. at 650; Matthews, 22
Mass. App. Ct. at 379.  The answer
provided by the arbitrator does not comport with statutes expressing strong
public policies on teacher tenure and parental leave.
      We conclude that the teacher earned
professional teacher status, and her discharge was improper under the standards
set forth in G. L. c. 71, §§ 41 and 42, as well as the protected
parental leave under G. L. c. 149, § 105D.  The judgment of the Superior Court confirming
the arbitration award is reversed.  A new
judgment shall enter vacating the arbitration award and remanding the matter to
the arbitrator, who "may award back pay, benefits, reinstatement, and any
other appropriate non-financial relief or any combination thereof."  G. L. c. 71, § 42.  
So ordered.