**Toby Klang WARD, Plaintiff,**

v.

**Carol A. HICKEY, et al., Defendants.**

**Civ. A. No. 82–3510–N.**

United States District Court,
D. Massachusetts.

Aug. 31, 1990.

Americo A. Salini, Jr., c/o Mass. Teachers Ass'n, Boston, Mass., for plaintiff.

Andrew J. McElaney, Nutter McClennen & Fish, Devra Balin, David C. Hawkins, Withington, Cross, Park & Groden, Boston, Mass., for defendants.

## ORDER

DAVID S. NELSON, District Judge.

Pursuant to the Court's order of reference and upon consideration of a motion for reconsideration filed by the individual defendants named in this action in response to an earlier report and recommendation, Magistrate Collings issued an "Amended Report and Recommendation on Motion of Defendant School Committee to Dismiss Amended Complaint (# 08) and Motion of the Defendants' [sic] Hickey, Gibson and

Tinkham to Dismiss Amended Complaint (# 11)" dated November 16, 1989 ("Amended Report on Motions to Dismiss"). The parties subsequently filed objections, responses and replies in connection with the Amended Report on Motions to Dismiss. In addition, Magistrate Collings issued a "Memorandum and Order on Plaintiff's Motions to Compel Margaret Gibson and Mary M. Tinkham, Defendants, to Answer Deposition Questions Relative to the Identity of Individuals (## 31 & 32)" dated November 21, 1989 ("Order on Motions to Compel"). The parties subsequently filed objections and responses in connection with the Order on Motions to Compel.

 Upon *de novo* review of the parties' submissions in connection with the defendants' motion to dismiss, the Court reaches findings and conclusions consistent with those set forth in the Amended Report on Motions to Dismiss and therefore adopts the magistrate's recommendations contained therein. Moreover, upon review of the plaintiff's motions to compel, the Court finds that the Order on Motions to Compel is not clearly erroneous in fact or contrary to law. Accordingly, for the reasons set forth in the Amended Report on Motions to Dismiss and Order on Motions to Compel, the Court enters the following order:

A. Counts II, III, IV and V of the Amended Complaint are dismissed as to all defendants;

B. Count I of the Amended Complaint, as drafted, is dismissed as to defendant The School Committee of the Town of Belmont;

C. The plaintiff is granted leave to file and serve a second amended complaint containing allegations which state a claim against the School Committee for deprivation of the plaintiff's First Amendment rights in denying her re-appointment and tenure based on her discussion of abortions, reproduction and Proposition 2½ in the classroom and for deprivation of her right not to be denied re-appointment and tenure based on her discussion of abortions, reproduction and Proposition 2½ in the classroom without prior notification that such conduct was not permissible;

D. Summary judgment shall be entered in favor of the defendant Margaret Gibson on the claim contained in Count I that she voted not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure in retaliation for the letter that the plaintiff wrote to the editor of the local newspaper in 1980;

E. Summary judgment shall be entered for the defendants Hickey, Gibson and Tinkham on the claim contained in Count I that they violated the plaintiff's First Amendment rights in voting not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure on the basis of her discussion of abortions, reproduction and Proposition 2½ in the classroom;

F. The plaintiff is granted leave to file and serve a second amended complaint containing allegations which state a claim that the defendants Hickey, Gibson and Tinkham violated the plaintiff's constitutional rights in voting not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure on the basis of her discussion of abortions, reproduction and Proposition 2½ in the classroom without giving her notice that discussing such topics in the classroom was not permissible;

G. The Court declines to vacate or modify Magistrate Collings' Order on Motions to Compel.

SO ORDERED.

AMENDED REPORT AND RECOMMENDATION ON MOTION OF DEFENDANT SCHOOL COMMITTEE TO DISMISS AMENDED COMPLAINT (# 08) AND MOTION OF THE DEFENDANTS' [SIC] HICKEY, GIBSON AND TINKHAM TO DISMISS AMENDED COMPLAINT (# 11)

ROBERT B. COLLINGS, United States Magistrate Judge.

INTRODUCTION

The plaintiff Toby Klang Ward was hired on an annual basis for three consecutive school years, 1979–1980, 1980–1981 and 1981–1982, as a full time teacher at the

Belmont High School. In June of 1982, the Belmont School Committee voted not to reappoint Mrs. Ward as a teacher for the upcoming school year, and consequently denied her tenure in the Belmont School system. Mrs. Ward has commenced this action against the Belmont School Committee and its three members who voted against her reappointment. She seeks injunctive, declaratory and compensatory relief.

## A SUMMARY OF THE AMENDED COMPLAINT

Count I of the plaintiff's five-count amended complaint alleges a cause of action for a deprivation of her First Amendment rights in violation of 42 U.S.C. § 1983. Count II, a claim containing allegations of conspiracies by the defendants to discriminate against Mrs. Ward because of her exercise of her First and Fourteenth Amendment rights, all in violation of 42 U.S.C. § 1985, has been withdrawn by the plaintiff.[1] Count III alleges that by their acts, omissions and conduct the defendants denied the plaintiff due process and equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983. Count IV of the amended complaint is a pendant state claim for wrongful termination. Count V, another pendant state claim, has been voluntarily dismissed by the plaintiff.[2]

## THE MOTIONS TO DISMISS

In separate motions, the Belmont School Committee and the three defendants, Carol A. Hickey, Margaret Gibson and Mary M. Tinkham, who have been named both individually and in their official capacities, have moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Due to the various independent legal arguments upon which these two motions are predicated, they will be treated separately in this discussion.

In evaluating the merit of a motion to dismiss, the Court assumes that all the material allegations set forth in the complaint are true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404 (1969); *O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1 Cir., 1976), *denied sub nom O'Brien v. Jordan*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The averments of the complaint, as well as the proper inferences arising therefrom, are liberally construed in favor of the plaintiff and will not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–56, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## PLAINTIFF'S FACTUAL ALLEGATIONS

In her amended complaint, the plaintiff alleges that the School Committee of the Town of Belmont is a public body responsible under law for the administration of the public schools of the town. (Para. 4) The individually-named defendants are duly elected members of the School Committee. (Para. 5–7) At all times germane to the complaint, the plaintiff alleges that all the defendants "acted under color of the statutes, customs, ordinances, and usage of the State of Massachusetts, the Town of Belmont and the Belmont School Committee." (Para. 8)

With respect to the nature of her action, Mrs. Ward avers that she was appointed as a full time high school science teacher in the Belmont Public Schools during the school years 1979–1980, 1980–1981 and 1981–1982. (Para. 9, 12 and 15) During the course of each of these three school years, Mrs. Ward's teaching performance was evaluated as excellent, and she was recommended for reappointment for the subsequent school year. (Para. 11, 14 and 17) The recommendation that Mrs. Ward be re-elected with tenure in May of 1982 was first tabled by the Belmont School Committee upon the motion of Carol A. Hickey, and ultimately voted down by the School Committee in June of 1982. (Para.

---

**1.** *See* Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss, #22 at p. 54.

**2.** *See* Plaintiff's Second Supplemental Memorandum In Opposition To The Individual Defendants' Motion To Dismiss, #77 at p. 4.

18, 19 and 20) The vote denying the plaintiff reappointment with tenure was a three-to-three tie with defendants Hickey, Gibson and Tinkham voting against the recommendation. (Para. 20 and 22)

During the interim period between the initial tabling of the recommendation in May and the vote in June, the plaintiff alleges upon information and belief that either defendant Gibson or the School Committee requested that a member of the administrative staff investigate some "concerns" that the Committee had with respect to the plaintiff's teaching performance. (Para. 23) The plaintiff contends that these "concerns" involved her discussion of abortion, reproduction and Proposition 2½ in classes with her students. (Para. 24 and 26) Mrs. Ward claims that she was never on notice from the School Committee that the discussion of these subjects in the classroom was inappropriate. (Para. 27) Further, she alleges upon information and belief that the defendants retaliated against her for discussing abortion, reproduction and Proposition 2½ by voting against her reappointment with tenure. (Para. 25)

Mrs. Ward also makes specific allegations against two of the three individually-named defendants, Margaret Gibson and Carol A. Hickey. She alleges that in the Spring or early Summer of 1980, Mrs. Gibson made a statement about widespread teacher absences on Mondays and Fridays wondering whether they were related to a hidden alcohol problem among the faculty. (Para. 28) Mrs. Ward submitted a letter opposing Mrs. Gibson's allegations to the local newspaper. (Para. 29) The plaintiff claims that Mrs. Gibson was aware of her rebuttal letter and as a result retaliated against her by voting not to reappoint her with tenure in June of 1982. (Para. 30 and 31) The plaintiff alleges that Mrs. Hickey had a personal grudge against her for having given Mrs. Hickey's daughter a poor grade, and for that reason Mrs. Hickey voted against giving Mrs. Ward a reappointment with tenure. (Para. 33) Mrs. Ward contends that all the acts, omissions and conduct of the individual defendants Gibson, Hickey and Tinkham "were effectuated in bad faith exercises of personal prejudices and in deliberate, intentional, malicious and reckless disregard" of her First and Fourteenth Amendment rights. (Para. 33)

In Count I, Mrs. Ward claims that her own acts, omissions and conduct are either protected speech or an exercise of academic freedom and thereby are protected by the First and Fourteenth Amendments. (Para. 35) Mrs. Ward further alleges that all the defendants were substantially motivated by plaintiff Ward's exercise of her First Amendment rights in their acts, conduct and omissions in causing her non-reappointment and denying her tenure. (Para. 37) With respect to the School Committee, the language of the complaint closely tracks that of 42 U.S.C. § 1986 to the effect that:

37. The defendant Committee had knowledge, or (sic) had they diligently exercise (sic) their duties to instruct, supervise, and control the actions of defendant (sic) Gibson, Hickey and Tinkham, on a continuing basis, should have had knowledge that the wrongs conspired (sic) to be done, as heretofore alleged, were about to be committed and said defendant had the power to prevent said actions. The defendant Committee was in a position to prevent the wrongs, could have done so by reasonable diligence, but neglected or refused to do so.

(Para. 37)

The plaintiff contends that she has pleaded sufficient facts and allegations to state a cause of action under 42 U.S.C. § 1983.

## THE SCHOOL COMMITTEE

In its motion to dismiss with respect to Count I of the amended complaint, the Belmont School Committee submits that the plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

In pertinent part, 42 U.S.C. § 1983 reads: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdic-

tion thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In 1978, the United States Supreme Court determined, in contradiction to its earlier decision in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that municipalities and other local governmental bodies were "persons" within the meaning of § 1983 and were, therefore, directly amenable to suit under the statute. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court declared municipal liability under 42 U.S.C. § 1983 to be predicated upon two alternate bases, holding:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local government, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Id.* at 690–691, 98 S.Ct. at 2035–2036.

The boundaries of this expanded basis of municipal liability under § 1983 have been subject to further refinement and clarification in the years following *Monell*. Courts have struggled to define not only what should be deemed to be an actionable official policy or custom, but also whose actions may establish such an official policy. Of particular significance in the context of the instant case is the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452

(1986). The issue addressed in that case was identical to that raised in the present litigation: whether official municipal policy pursuant to which the deprivation of federally protected rights occurs may be constituted by a single, isolated decision by municipal policymakers and, if so, under what circumstances? *Id.* at 471, 106 S.Ct. at 1294. Answering this question in the affirmative, a plurality of the Court concluded that

> ...it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body.... But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell*'s language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," *Monell, supra* [436 U.S.], at 694 [98 S.Ct. at 2037], and whose decisions therefore may give rise to municipal liability under § 1983.

*Id.* 475 U.S. at 480, 106 S.Ct. at 1298.

The Court limited the breadth of this conclusion by further holding

> ...that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. (citation omitted)

*Id.* at 483, 106 S.Ct. at 1300.

Thus, while municipal liability under § 1983 may attach consequent to a single decision made by municipal policymakers, those municipal decisionmakers must be the "final authority to establish municipal policy with respect to the action ordered," making "a deliberate choice to follow a course of action." *Id.* at 483, 106 S.Ct. at 1300. *See also Small v. Inhabitants of City of Belfast*, 796 F.2d 544, 553 (1 Cir., 1986); *Wood-*

*ley v. Town of Nantucket,* 645 F.Supp. 1365, 1375–1378 (D.Mass., 1986).

In Massachusetts school committees are the final authority with respect to the employment of teachers. Their authority has been delegated pursuant to statute, Massachusetts General Laws Chapter 71 § 38, which provides that school committees "shall elect and contract with the teachers of the public schools...." This statutory interpretation is supported by case law. The Massachusetts Judicial Court has reiterated

> This court said in *MacKenzie v. School Committee of Ipswich,* 342 Mass. 612, 615, 174 N.E.2d 657 (1961), that the power of the school committee is "paramount" with respect to "the employment and discharge of teachers."

*School Committee of Brockton v. Teachers' Retirement Board,* 393 Mass. 256, 260, 471 N.E.2d 61, 64 (1984); *See also Demers v. School Committee of Worcester,* 329 Mass. 370, 373, 108 N.E.2d 651, 652 (1952) and cases cited therein. ("Authority to employ him [plaintiff teacher] was vested solely in the school committee."); *McAndrew v. School Committee of Cambridge,* 20 Mass. App. 356, 359, 480 N.E.2d 327, 329 (1985). As Judge Garrity of this Court has noted:

> The significance of state law in deciding whether an employee establishes "official policy" has been recognized by an apparent majority of the Supreme Court, see, *Pembaur, supra* [106 S.Ct.] at 1300–01; id. [106 S.Ct.] at 1304 (O'Connor, J., concurring in part and concurring in the judgment), and by the First Circuit. (citation omitted)

*Woodley v. Town of Nantucket, supra,* 645 F.Supp. at 1376.

The Belmont School Committee, therefore, was the official municipal body "responsible for establishing final policy with respect to 'the employment of the plaintiff teacher, Toby Klang Ward.'"

Further, there can be little question that an official vote, albeit a tie, of the School Committee during a duly convened meeting could constitute a deliberate choice by that municipal body on the issue of whether to re-elect the plaintiff with tenure. Finally, it is this School Committee decision not to rehire the plaintiff that allegedly deprived her of First and Fourteenth Amendment rights.

Having analyzed at some length the law respecting the School Committee's potential liability for its actions under § 1983 in the circumstances of this case, the Court returns to an examination of the allegations of Count I of the amended complaint. Although it appears that the plaintiff may indeed have the ability to successfully plead municipal liability under § 1983, she quite simply has failed to do so. It is not merely a matter of inartful pleading. Although denoted as a cause of action under § 1983, Count I is couched in the language of an action under § 1986 for neglect to prevent the commission of a conspiracy. Case law uniformly provides that unless a plaintiff has a legitimate claim for conspiracy under 42 U.S.C. § 1985, by definition there can be no relief under 42 U.S.C. § 1986. *See, e.g., Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 834 n. 14 (1 Cir., 1982), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). As noted earlier, the plaintiff has withdrawn her § 1985 claim, Count II of the amended complaint, thereby rendering a § 1986 claim untenable.

At no place in Count I does the plaintiff allege that the municipality had a policy, represented by the School Committee decision or otherwise, pursuant to which action was taken that caused her to be deprived of federally protected rights. The facts as alleged by the plaintiff, that the School Committee neglected its duty to prevent a conspiracy by the three individual defendants, does not state a cause of action under 42 U.S.C. § 1983.

Thus, I shall recommend that Count I of the amended complaint with respect to the Belmont School Committee be dismissed. In light of the recent evolution of the law in the area of municipal liability under § 1983, I shall further recommend that plaintiff be granted leave to file a second amended complaint with respect to her § 1983 claim against the Belmont School Committee.

■ Count III of plaintiff's amended complaint has been brought under 42 U.S.C. § 1983 and the Fourteenth Amendment. In this count, Mrs. Ward alleges that she "has a property right to be considered for reappointment and tenure based on reasons, and in a manner, that are not arbitrary, capricious, discriminatory or bad faith (sic)." (Para. 45) The plaintiff contends that the individually-named defendants voted against her reappointment with tenure for reasons unrelated to her teaching performance and in an arbitrary, capricious and discriminatory manner. (Para. 44) She alleges upon information and belief that the defendants attempted to, and did, in fact, deny her equal protection and due process rights by their conduct in failing to rehire her with tenure, and that their acts and conduct violated the Fourteenth Amendment and 42 U.S.C. § 1983. (Para. 46, 47)

In her memorandum, the plaintiff asserts that she has a property right or liberty interest to be considered for reappointment based upon her overall teaching performance in the Belmont School system predicated upon the Supreme Court decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). As the Court stated in *Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709, and reiterated in *Perry, supra*, 408 U.S. at 602, n. 7, 92 S.Ct. at 2700, n. 7:

> Property interests ... are not created by the Constitution. Rather, they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law ...

In order to state a cause of action for violation of a constitutional right of due process, the plaintiff must allege that a protected property right or liberty interest has been infringed. When determining if a nontenured teacher has such a property right or liberty interest to be considered for reappointment, the Court must follow the dictates of *Roth* and *Perry* and look to state law.

With respect to nontenured teachers, Massachusetts General Laws Chapter 71 § 41 requires only that a school committee shall give a timely written notice of termination on or before April fifteenth to any teacher not serving at discretion (nontenured) "whenever such person is not to be employed the following school year." The Massachusetts Supreme Judicial Court has held that

> Section 41 creates a right to timely notice so that the employee may promptly seek other employment ...; it is not itself directed to continuance of actual employment but imposes a real or hypothesized year's employment as a sanction to enforce the notice. (citations omitted)

*Bonar v. City of Boston*, 369 Mass. 579, 585, 341 N.E.2d 684, 688 (1976).

This state statute neither secured the plaintiff's interest in re-employment nor supported any legitimate entitlement to it. *Board of Regents v. Roth, supra*, 408 U.S. at 578, 92 S.Ct. at 2709. Thus, under Massachusetts law, a nontenured teacher hired on a year-to-year basis does not have a property interest in reappointment, but merely the right to timely notification that she/he has not been rehired. The plaintiff makes no claim that notification was improper. In a case such as this when the plaintiff was unquestionably hired for specific, definitive terms of employment

> ...such a clear contractual provision would make plaintiff a probationary employee with no property interest in employment beyond the specified term.

*Lovelace v. Southeastern Massachusetts University*, 793 F.2d 419, 421 (1 Cir., 1986).

Mrs. Ward asserts that the source of her property or liberty interests herein are based on public policy or a course of dealing. Her complaint, however, does not specify to what policy or course of dealings she refers. Indeed, the complaint does not contain any such allegation, or any facts to support such an allegation. Thus, the plaintiff herein is unlike the plaintiff in *Perry* who alleged that the college had a *de facto* tenure program, that he and others had relied on the college's Official Faculty

Guide to that effect, and that he had tenure under that program. The Court noted that

> In this case, the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent "sufficient cause."

*Perry, supra* 408 U.S. at 602–603, 92 S.Ct. at 2700.

Mrs. Ward has made no such allegations in her complaint. She is left, then, with the Massachusetts law that does not give her the alleged property interest.

The second right that plaintiff Ward asserts that she has is a constitutional property right to be considered for reappointment and tenure in a manner and for reasons that are not arbitrary, capricious, discriminatory or in bad faith. Although this contention is unclear at best, to the extent that Mrs. Ward claims a property right in due process, her argument is in direct opposition to the Supreme Court's decision in *Roth* that "property interests . . . are not created by the Constitution." A nontenured teacher may be denied reappointment for any reason or no reason at all. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). Although there is no "just cause" standard, a decision not to re-elect such an educator may not be based upon unconstitutional reasons. However, to the extent the plaintiff is claiming a right not to be denied tenure as a result of her exercise of First Amendment rights, Count III is merely a reiteration of Count I. Finally, to the extent that the plaintiff is claiming only the right to reappointment and tenure in a manner that is not arbitrary and capricious, she has failed to state a constitutional cause of action. *See, e.g., Casey v. DePetrillo*, 697 F.2d 22, 23 (1 Cir., 1983).

In sum, for all these reasons, I find that Count III of plaintiff's amended complaint fails to state a cause of action for denial of her due process and equal protection rights under 42 U.S.C. § 1983, and the Fourteenth Amendment. I shall therefore recommend that this count to the extent that it seeks to state a claim against the Belmont School Committee be dismissed.

■ In light of the Court's recommendation that the plaintiff be granted leave to file a second amended complaint with respect to Count I thereby preserving a federal cause of action, the merits of the pendant state claim raised in Count IV will be addressed. By this count, the plaintiff claims that the School Committee has violated an implied covenant of good faith and fair dealing inherent in her employment contract by wrongfully failing to reappoint her with tenure.

This pendent state claim fails to state a claim for two reasons. First, the plaintiff had been hired for the specified term of one school year during 1979–1980, 1980–1981 and 1981–1982. As was discussed with respect to Count III, Mrs. Ward had no entitlement to continued employment upon the expiration of her contract for 1981–1982. The School Committee vote not to re-elect the plaintiff did not impact upon her last term of employment. In other words, the School Committee did not terminate or breach the plaintiff's contract of employment, but rather the defendant failed to *reappoint* the plaintiff to a position to which she had no legal entitlement. Although characterized by the plaintiff as a "semantic game," the fact of the matter is that the plaintiff was not terminated; she completed her specified term of employment and thereafter was not granted a contract for the 1982–1983 school year.

Second, in Massachusetts, the nature and scope of a non-tenured teacher's rights to employment are comprehensively regulated by statute. As early as 1932, the Supreme Judicial Court wrote

> These provisions (of MGL c. 71) indicate the purpose of the General Court to cover the field of relations between teachers and school committees and not to leave operative general rules arising by implication which would govern the rights between independent parties. (Citation omitted)

*Paquette v. City of Fall River*, 278 Mass. 172, 174, 179 N.E. 588, 590 (1932); *Ryan v.*

*Superintendent of Schools of Quincy,* 363 Mass. 731, 738, 297 N.E.2d 37, 41 (1973). Under Massachusetts law, there are no implied covenants that adhere to the one-year employment contract of a non-tenured teacher.

On the basis of either of these two alternative grounds, the plaintiff has failed to state a claim and, therefore, I shall recommend that the defendant School Committee's motion to dismiss be allowed to the extent that a dismissal of Count IV is sought.

### DEFENDANTS HICKEY, GIBSON AND TINKHAM

■ As a threshold basis for dismissal of Counts I and III of the amended complaint, the individual defendants argue that the applicable statute of limitations serves as a bar to these causes of action. Since the Reconstruction Civil Rights Acts establish no specific time limitations with respect to claims brought under § 1983, as is customary, the court turns to local law, in this instance, Massachusetts statutes of limitations.

The defendants, characterizing the plaintiff's action as that of a public school teacher seeking restoration of her employment, point to Massachusetts General Laws, Chapter 71, Section 43A as being the most analogous state statute. This statute is applicable to tenured teachers who have been dismissed, demoted or removed, providing a 30–day period during which such aggrieved teacher may appeal to the Superior Court for relief. Not only does the Court find the defendants' argument unpersuasive under earlier guidelines set forth to be considered in determining which state statute should be applied, *see Burns v. Sullivan,* 619 F.2d 99, 105 (1 Cir., 1980), their basic analytical framework has been mooted by intervening decisions by the Supreme Court and the First Circuit.

In response to the perceived "... conflict, confusion, and uncertainty concerning the appropriate statute of limitations to apply to this most important, and ubiquitous, civil rights statute (§ 1983)," *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 1941, 85 L.Ed.2d 254 (1985), the Supreme Court determined that a simple approach "should be adopted to further 'federal interests in uniformity, certainty, and the minimization of unnecessary litigation....'" *Id.* at 275, 105 S.Ct. at 1946. Concluding that federal law governs the characterization of claims brought under § 1983 for statute of limitations purposes, the Court further decided that "a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose." *Id.* at 268, 272, 105 S.Ct. at 1942, 1945. The Supreme Court held that all "§ 1983 claims are best characterized as personal injury actions." *Id.* at 280, 105 S.Ct. at 1949.

The corollary to the decision is that the appropriate local statute of limitations applicable to a § 1983 claim would be that particular state statute which governs tort actions for personal injuries. *Small v. Inhabitants of City of Belfast,* 796 F.2d 544, 545 (1 Cir., 1986). In the instant case, Massachusetts General Laws, Chapter 260, Section 2A, a three year statute of limitations for tort actions, represents the proper time limitation provision to be applied to the plaintiff's § 1983 claims. *See Doty v. Sewall,* 784 F.2d 1, 11 (1 Cir., 1986). The original complaint in this case was filed on November 18, 1982; the events complained of occurred in the spring of 1982. Plaintiff's claims are not barred by the statute of limitations.

Count I of the amended complaint identifies two types of conduct that are alleged to be protected by the First and Fourteenth amendments. First, the plaintiff alleges that defendant Gibson voted against her reelection in retaliation for a letter that Mrs. Ward submitted to a local newspaper. Second, the plaintiff claims that each of the three individual defendants voted against her reappointment with tenure as a consequence of her discussion of abortions, reproduction and Proposition 2½ in the classroom. The Court will address each of these areas of conduct in turn.

■ With respect to the alleged retaliation for the letter to the newspaper, it is to be noted that the motion to dismiss as to

Margaret Gibson will be treated as a motion for summary judgment as per the Procedural Order entered by the undersigned on February 2, 1984. The issue is whether there is any dispute of material fact with respect to the question of whether defendant Gibson voted against the plaintiff's reappointment in retaliation for a letter plaintiff submitted to the newspaper, and if not, whether the defendant Gibson is entitled to judgment on that claim as a matter of law.

It is undisputed that in the early Summer of 1980 an article was printed in the local Belmont paper concerning teacher absences from school on Mondays and Fridays. (See Deposition of Toby Klang Ward [# 68] at p. 106 and exhibit 11 thereto; Deposition of Margaret A. Gibson [# ] at pp. 6–9). The article quoted defendant Gibson as saying "This problem should not be overlooked. Some of these people may need help. This is a tell-tale sign." The article further stated "although she didn't refer to it specifically, Gibson appeared to be talking about a possible alcohol problem." In response to this article, the plaintiff wrote a letter to the editor which was published in the newspaper. (See, Ward Deposition at p. 108 and exhibit 12 thereto; Gibson Deposition at pp. 9–11).

In her letter, the plaintiff took issue with the substance of the article on teacher absences. Of material interest in the present litigation, the plaintiff wrote "Not only did you misrepresent Margaret Gibson's comments, but you proceeded to fabricate a reason for teacher absence...." In her complaint, the plaintiff alleges

31. Defendant Gibson retaliated against Plaintiff Ward for her expressed opposition to her charges against teachers by voting against her re-election and denial of tenure in June of 1982.

This allegation is based solely upon the newspaper article and the plaintiff's letter to the editor. There is no other direct evidence in support of the allegation. Defendant Gibson in her Affidavit, Etc. (# 66) denies the allegation. Accordingly, only if there is circumstantial evidence which could lead a trier of fact to infer that defendant Gibson voted against plaintiff's re-appointment would there be a dispute of material fact which would avoid summary judgment.

I find no evidence upon which such an inference could be drawn. First, the plaintiff mischaracterizes her own letter. On its face, it is not either in fact or impliedly critical of defendant Gibson. If anything, it is more fairly read to criticize the newspaper for, *inter alia*, "misrepresent(ing) Margaret Gibson's comments." Second, even if it can be assumed that the plaintiff's letter could be interpreted as opposing defendant Gibson's comments, it cannot be inferred that the letter caused Gibson's negative vote in 1982. In fact, defendant Gibson voted to rehire the plaintiff for the 1981–1982 school year *after* the plaintiff's letter had been published. (*See* Ward Deposition at p. 109; Gibson Deposition at pp. 13–14). Thus, the negative vote by defendant Gibson came two years subsequent to the publication of the plaintiff's letter and followed a prior positive vote. Given this sequence of events, no trier of fact could reasonably infer that defendant Gibson's negative vote in 1982 was in retaliation for plaintiff Ward's 1980 letter.

The plaintiff offering no other evidence to raise an issue of material fact, I shall recommend that summary judgment be allowed in favor of defendant Gibson on that claim contained in Count I which alleges that the defendant Gibson's negative vote not to reappoint plaintiff and thereby grant her tenure was in retaliation for her letter to the editor.

■ The individual defendants' primary argument in their motion to dismiss Court I of plaintiff's Amended Complaint, however, is that as school committee members they are not liable for any actions they may have taken because they are entitled to qualified immunity. Qualified immunity is an affirmative defense that must be pleaded and proven by the party asserting it. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). The defendants have pleaded this defense in their Answer, Etc. (# 46A). As discussed with counsel at oral argument, this aspect of the defendants' motion to dismiss

will be treated as a motion for summary judgment. The plaintiff is in no way prejudiced by this treatment because there is no dispute that the individual defendants were acting in their official capacities and performing a discretionary function when they voted against reappointing Mrs. Ward with tenure in 1982. It is a question of law as to whether the defendants, acting in their official capacities, are entitled to the protection of qualified immunity as a shield to personal liability. This issue is susceptible to determination on a motion for summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The parties agree that the Supreme Court decision in *Harlow v. Fitzgerald*, *supra*, defines the contours of the qualified immunity defense. The Court wrote:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (Citations omitted)

*Id.* at 818, 102 S.Ct. at 2738.

Further, the Court declared that on a motion for summary judgment

> ...the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred. If the law at that time was not clearly established, an official would not reasonably be expected to anticipate subsequent legal developments, nor could he be fairly said to "know" that the law forbade conduct not previously identified as lawful.

*Id.* at 818, 102 S.Ct. at 2738.

With these pronouncements, the Supreme Court has defined qualified immunity in objective as opposed to subjective terms. The dispute in this case centers on whether there was a violation of "clearly established statutory or constitutional rights."

With respect to the second type of conduct that the plaintiff describes, it is clear that a nontenured teacher

...may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms. (citation omitted)

*Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

In her complaint, the plaintiff alleges that her discussion of abortion, reproduction and Proposition 2½ in her high school biology class was constitutionally protected activity and that this exercise of her First Amendment rights was a substantial motivating factor in the individual defendants' negative votes to rehire her. These allegations are sufficient to state a claim in the first instance. *Mt. Healthy City School District Board of Education v. Doyle*, *supra*, 429 U.S. at 287, 97 S.Ct. at 576; *Lovelace v. Southeastern Massachusetts University*, 793 F.2d 419, 425 (1 Cir., 1986). The issue raised by the defendants' motion is whether, assuming the plaintiff's allegations to be true, that as individuals acting in their official capacities on matters within the scope of their discretionary functions, they "are shielded from liability for civil damages" by qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bonitz v. Fair*, 804 F.2d 164, 166 (1 Cir., 1986). The Supreme Court has held that

> Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.

*Davis v. Scherer*, 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984).

An official's success in claiming a qualified immunity for his actions is dependent upon the "objective reasonableness of (his) conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, *supra*, 457 U.S. at 818, 102 S.Ct. at 2738 (footnote omitted); *Davis v. Scherer*, *supra*, 468 U.S. at 191, 104 S.Ct. at 3017; *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987);

*Borucki v. Ryan,* 827 F.2d 836, 837–838 (1 Cir., 1987).

The focus in a qualified immunity analysis is "on the right allegedly violated," not the defendants' asserted conduct. *Bonitz v. Fair, supra,* 804 F.2d at 167. The "clearly established law" standard is applied to that right on a particularized rather than general level:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful ..., but it is to say that in light of pre-existing law the unlawfulness must be apparent. (Citations omitted)

*Anderson v. Creighton, supra,* 483 U.S. at 640, 107 S.Ct. at 3039.

Thus, the inquiry in the instant litigation is not whether the plaintiff enjoyed a right to freedom of speech or academic freedom under the First Amendment, but rather, whether it was clearly established in 1982 that the plaintiff had an unfettered constitutional right to discuss controversial subjects in the high school classroom.

In 1969, the Supreme Court reiterated the long standing proposition that

> It can hardly be argued that either students or teachers shed their constitutional rights to freedoms of speech or expression at the schoolhouse gate.

> \*　　\*　　\*　　\*　　\*　　\*

> On the other hand, the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. (Citation omitted).

*Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506–507, 89 S.Ct. 733, 736–737, 21 L.Ed.2d 731 (1969).

More recently, the Court again postulated the need to balance sometimes conflicting interests, stating

The Court has long recognized that local school boards have broad discretion in the management of school affairs...at the same time, we have necessarily recognized that the discretion of the states and local school boards on matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment.

*Board of Education v. Pico,* 457 U.S. 853, 863–864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). While it can be said that First Amendment rights are viable in the schoolhouse setting, the actual nature and extent of those rights are not unlimited; and, in fact, are the subject of substantial disagreement. The plurality opinion in the *Pico* case is an example in point.

The issue before the Court in *Pico* was whether the First Amendment imposed any limitation on the discretion of the Boards of Education in removing library books from high school and junior high school libraries. *Board of Education v. Pico, supra,* 457 U.S. at 863, 102 S.Ct. at 2806. Justice Brennan announced the judgment of the court, with Justices Marshall and Stevens joining in his opinion, and in which Justice Blackmun joined except in Part II–A–(1). Separate concurring opinions were authored by Justice Blackmun and Justice White. Separate dissenting opinions were filed by Justice Powell and Justice O'Connor. A dissenting opinion was written by Chief Justice Burger, in which he was joined by Justices Powell, Rehnquist and O'Connor. Justice Rehnquist also filed a dissenting opinion, and he was joined by Chief Justice Burger and Justice Powell. The inability to reach a uniform opinion on the proper balancing of interests in the sensitive area of First Amendment rights at the high school academic level is highlighted by this split decision.

On the specific issue of a teacher's right to First Amendment free speech and academic freedom in the classroom, the First Circuit has stated that

> ...free speech does not grant teachers a license to say or write in class whatever they may feel like ...

but rather, such freedom is dependent upon the circumstances involved. *Mailloux v. Kiley,* 448 F.2d 1242, 1243 (1 Cir., 1971). The determination of what conduct

> ...can reasonably be deemed both offensive and unnecessary to the accomplishment of educational objectives...are matters of degree involving judgment on such factors as the age and sophistication of students, relevance of the educational purpose, and context and manner of presentation.

*Mailloux v. Kiley,* 436 F.2d 565, 566 (1 Cir., 1971).

By its very nature this balancing of considerations is fact specific and does not lend itself to be subject to any general rule. In each case, a teacher's right to free speech must be weighed against the school authorities' interests in the due administration of the schools. When confronted with the question of whether a secondary school teacher had the right to write a taboo word on the blackboard and further engage in discussion of that slang term, the Court "confessed" that

> ...we are not of one mind as to whether plaintiff's conduct fell within the protection of the First Amendment.

*Mailloux v. Kiley, supra,* 448 F.2d at 1243. Again, there appears to be no consensus in absolute terms of what the outcome should be when balancing conflicting interests to the specific facts in a case.

In their supplemental brief, the defendants have cited a myriad of cases that have upheld the power of a school committee to either discharge or refuse to rehire a teacher based upon that teacher's inappropriate conduct in the classroom. (*See,* Supplemental Memorandum, Etc., # 65 at pp. 3–6). These cases are illustrative of the need to balance the rights of the teacher against the interests of the school boards, weighing all of the circumstances in order to determine whether a violation has occurred. In her own brief, the plaintiff states that

> In sum, the law may not be settled that all conduct that falls within the area of academic freedom in the classroom is protected activity.

(*See,* Plaintiff's Memorandum, Etc., # 22 at p. 29.)

As the First Circuit has recently written

> ...when the law requires a balancing of competing interests, it may be unfair to charge an official with knowledge of the law in the absence of a previously decided case with clearly analogous facts. (Footnote omitted)

*Borucki v. Ryan, supra,* 827 F.2d at 848 and case cited therein. The Court has not found such a case with *"clearly* analogous facts." Given the variety of factors that must be considered, what is reasonable in a given case such as this is necessarily fact specific. Finally, the plaintiff's allegations do not demonstrate that

> defendant(s') actions were so egregious that the result of the balancing test will be a foregone conclusion, even though prior caselaw may not address the specific facts at issue.

*Benson v. Allphin,* 786 F.2d 268, 276 and n. 18 (7 Cir., 1986); *Bonitz v. Fair, supra,* 804 F.2d at 173 and n. 10; *Borucki v. Ryan, supra,* 827 F.2d at 848.

The conclusion must be reached that the plaintiff had no clearly established First Amendment right to discuss certain controversial subjects in her high school classroom.

Having reached this conclusion, however, the Court additionally finds that the plaintiff did enjoy a clearly established constitutional right to notice that her conduct was deemed to be unacceptable before it could form the basis of an adverse decision respecting her employment.

In 1967, the Supreme Court held:

> When one must guess what conduct or utterance may lose him his position, one necessarily will "steer far wider of the unlawful zone..." The danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being proscribed. (Citations omitted)

*Keyishian v. Board of Regents,* 385 U.S. 589, 604, 87 S.Ct. 675, 684, 17 L.Ed.2d 629 (1967).

This proposition was found to be applicable not only to teachers who were dismissed, but also to a teacher whose one-year contract was not renewed as a result of his refusal to sign a certain required certificate. *Id.* at p. 592, 87 S.Ct. at p. 678. Vague notice, or in this case allegedly no notice

. . . . cannot justify a post facto decision by the school authorities that the use of a particular teaching method is ground for discharge, or other serious sanction, simply because some educators disapprove of it.

*Mailloux v. Kiley, supra,* 448 F.2d at 1243; *Keefe v. Geanakos,* 418 F.2d 359, 362 (1 Cir., 1969); *Parducci v. Rutland,* 316 F.Supp. 352, 356–357 (M.D.Ala., 1970).

Nor can it be said as a matter of law that the plaintiff's conduct was so outrageous or beyond educational purposes that no notice was necessary, especially in light of her allegations that she had discussed these topics in two prior years with no repercussions.

None of the cases cited by the defendants are inopposite to the finding that plaintiff had a clearly established right to notice before the imposition of sanctions. For example, in *Goldwasser v. Brown,* although the Court found the plaintiff's First Amendment claims to be unavailing given "the uniqueness of (his) teaching function," it was noted that the teacher had "been repeatedly warned not to engage in" the discussion of controversial subjects. *Goldwasser v. Brown,* 417 F.2d 1169, 1171 (D.C.Cir., 1969), *cert. denied,* 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970). In another case where a probationary teacher was not rehired and thereafter brought an action for, *inter alia,* violation of her First Amendment rights, the facts showed that the Superintendent of Schools "informed (plaintiff) that he felt she had used bad judgment in her conduct of these classroom discussions." *Robbins v. Board of Education of Argo Community High School,* 313 F.Supp. 642, 644 (N.D.Ill., 1970).

In a third case upon which the defendants rely, the plaintiff was not rehired allegedly due to his insistence on assigning a certain book as required reading. In his complaint, the teacher alleged that prior to the time that he was advised his contract would not be renewed, he had been called to the principal's office and told about a complaint that had been received concerning the assignment of that particular book. *Parker v. Board of Education of Prince George's County, Md.,* 237 F.Supp. 222, 224 (D.Md.1965), *aff'd* 348 F.2d 464 (4 Cir., 1965), *cert. denied* 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543 (1966). Finally, in two cases which the defendants claim further demonstrate a school committee's power to regulate a teacher's in-classroom conduct, the teachers were on clear notice that their conduct was considered to be inappropriate. *See Tardif v. Quinn,* 545 F.2d 761, 762 (1 Cir., 1976) ("For over a year [the plaintiff teacher] and . . . her department head . . . had disputed the length of plaintiff's skirts . . . . plaintiff . . . shortened her dresses. This met with vigorous objection . . . ."); *East Hartford Education Association v. Board of Education of East Hartford,* 562 F.2d 838, 839–840 (2 Cir., 1977) (en banc) (dress code for teachers undisputedly required plaintiff to wear a jacket, shirt and tie). Thus, in each of these cases the teacher had at least some type of notice that his/her conduct was considered to be inappropriate.

In the general allegations concerning the nature of her claims which are incorporated by reference into Count I, the plaintiff specifically alleges that:

Defendant Committee never informed plaintiff Ward that it was inappropriate to discuss abortions or reproductions in her classroom. When plaintiff Ward discussed "Proposition 2½," Defendant Committee did not inform her that it was inappropriate to discuss that subject.

Amended Complaint, Etc. (# 05) at para. 27.

There are no similar specific allegations contained in the amended complaint with respect to the individual defendants. However, having determined that the plaintiff had a clearly established constitutional right to notice that her in-classroom speech was deemed to be improper prior to the

time sanctions were levelled against her, the individual defendants would not be entitled to the protection of qualified immunity in the event any claim comparable to that asserted against the School Committee was also asserted against them. I shall therefore recommend that the plaintiff be permitted to file and serve a second amended complaint containing allegations that the three individual defendants violated the plaintiff's constitutional right in voting not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure on the basis of her discussion of abortions, reproduction and Proposition 2½ in the classroom without giving her notice that discussing such topics in the classroom was not permissible.

The Court's analysis of the claims set forth in Counts III and IV with respect to the School Committee are fully applicable to the three individual defendants. Incorporating those discussions herein by reference, I shall recommend that Counts III and IV of the amended complaint be dismissed against defendants Hickey, Gibson and Tinkham.

### RECOMMENDATIONS

In sum, I RECOMMEND that Counts II, III, IV and V of the Amended Complaint be DISMISSED in their entirety as to all defendants.

I RECOMMEND that Count I as against The School Committee of the Town of Belmont be DISMISSED as drafted. However, I FURTHER RECOMMEND that the plaintiff be granted leave to file and serve a second amended complaint containing allegations which states a claim against the School Committee for deprivation of the plaintiff's First Amendment rights in denying her re-appointment and tenure based on her discussion of abortions, reproduction and Proposition 2½ in the classroom and for deprivation of her right not to be denied re-appointment and tenure based on her discussion of abortions, reproduction and Proposition 2½ in the classroom without prior notification that such conduct was not permissible.

I RECOMMEND that summary judgment be entered for defendant Margaret Gibson on the claim contained in Count I that she voted not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure in retaliation for the letter the plaintiff wrote to the editor of the local newspaper in 1980.

I RECOMMEND that summary judgment be entered for the defendants Hickey, Gibson and Tinkham on the claim in Count I that they violated the plaintiff's First Amendment rights in voting not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure on the basis of her discussion of abortions, reproduction and Proposition 2½ in the classroom because the defendants enjoy immunity from liability for those acts.

I RECOMMEND that the plaintiff be granted leave to file and serve a second amended complaint containing allegations which are sufficient to state a claim that the defendants Hickey, Gibson and Tinkham violated the plaintiff's constitutional right in voting not to re-appoint the plaintiff and thereby not to grant the plaintiff tenure on the basis of her discussion of abortions, reproduction and Proposition 2½ in the classroom without giving her notice that discussing such topics in the classroom was not permissible because the defendants do not enjoy immunity from liability for those acts.

### REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v.*

*Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

November 16, 1989

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTIONS TO COMPEL MARGARET GIBSON AND MARY M. TINKHAM, DEFENDANTS, TO ANSWER DEPOSITION QUESTIONS RELATIVE TO THE IDENTITY OF INDIVIDUALS (## 31 & 32)

Reference is made to the Amended Report and Recommendation, Etc., entered in this case on November 16, 1989.

If the Amended Report and Recommendation, Etc. is adopted by the District Judge to whom this case is assigned and the plaintiff files a second amended complaint which states the claims which I have indicated would survive a motion to dismiss and a motion for summary judgment on qualified immunity grounds, I have determined that the interests of the plaintiff in obtaining discovery from the sources of information about the plaintiff which was communicated to defendants Gibson and Tinkham outweigh the interests of the sources in confidentiality and the interests of the students, parents and School Committee in uninhibited communication of complaints and concerns about teachers by students and parents to school committee members. I shall therefore compel the answers and allow depositions of the sources who are revealed but only pursuant to protective provisions which protect, to the extent possible, these latter interests which the defendants have articulated and which are legitimate.

The reason for my ruling is that I see this case as a fairly close one which will rest in considerable measure on the credibility of the defendant School Committee members especially as to their assertions that the negative votes which they cast were not the result of the plaintiff's exercise of her First Amendment rights in the classroom. To be sure, the defendants Gibson and Tinkham have testified as to what they contend is the content of the communications without revealing the sources. The problem is that if the sources of the communications are not revealed, there is no way for the plaintiff to discover whether what the defendants Gibson and Tinkham said was told them was, in fact, what told to them. For example, what if the sources testify that what they complained about was the content of what the plaintiff said in the classroom? Can it be disputed that such evidence could very well undercut the claims of the defendants Gibson and Tinkham that they voted against renewing plaintiff's contract, at least in part, not because of what the plaintiff said but how she "handled" the topics with the students? The distinction is somewhat subtle, yet the distinction is the basis of the justification for the action. In judging the credibility of the asserted reasons of the defendants Gibson and Tinkham for acting as they did in this case, the jury should have the benefit of all available evidence as to the information which was communicated to the defendants Gibson and Tinkham by the parents and students.

Accordingly, it is ORDERED that the Plaintiff's Motions To Compel Margaret Gibson and Mary M. Tinkham, Defendants, To Answer Deposition Questions Relating To The Identity Of Individuals (## 31 & 32) be, and the same hereby are, ALLOWED subject to the following conditions:

(1) The defendants Gibson and Tinkham shall not have to answer the questions until the District Court acts on the Amended Report and Recommendation, Etc. and permits the plaintiff to file a second amended complaint which contains the claims recited in the first recommendation (pp. 32–3) and the fourth recommendation (pp. 33–4) and said second amended complaint is, in fact, filed.

(2) The depositions of defendants Gibson and Tinkham shall be closed to all but counsel for the parties in this case and the transcripts of the depositions shall

not be disclosed to anyone except counsel for the parties and those persons who are parties to this litigation.

(3) Neither the parties nor counsel shall divulge the contents of the depositions, including the identity of any of the persons who communicated to Ms. Gibson and/or Ms. Tinkham, or any other information obtained from the deposition without leave of Court.

(4) The plaintiff may notice the deposition of any person identified by Ms. Gibson and/or Ms. Tinkham as having provided information about the plaintiff. So far as appears, this will amount to two persons, the parent who spoke to both Ms. Gibson and Ms. Tinkham and the student who spoke to Ms. Gibson.

(5) The depositions of these two persons shall be closed to all but counsel for the parties and the transcripts of the depositions shall not be disclosed to anyone except counsel for the parties and those persons who are parties to this litigation.

(6) Neither the parties nor counsel shall divulge the contents of the depositions of the two persons nor any information obtained during the deposition, including the identity of the two persons, to any other person without leave of Court.

(7) If the deposition transcripts need to be filed in Court or any pleading needs to be filed in Court which contains any information obtained during the depositions of Ms. Gibson, Ms. Tinkham and/or the two persons, the transcripts and pleadings shall be filed under seal.

SO ORDERED pursuant to Rule 26(c), Fed.R.Civ.P.

Upon motion, the Court will consider any further protections which any counsel wish to suggest.

November 21, 1989.