KATHLEEN GONCALO *vs.* SCHOOL COMMITTEE OF FALL RIVER.

No. 99-P-174.

Bristol. December 12, 2000. - May 30, 2002.

Present: ARMSTRONG, C.J., KAPLAN, & GREENBERG, JJ.

*School and School Committee,* Arbitration, Termination of employment. *Arbitration,* Judicial review. *Education Reform Act.*

This court, characterizing an arbitrator's decision as one ruling that a dismissed school teacher was not entitled to reinstatement and back pay, where the teacher lacked the professional teacher status at the time of her dismissal that was a precondition for her obtaining relief under G. L. c. 71, § 42, and where no employment relationship had existed for many years, concluded, in accordance with G. L. c. 150C, § 11(*d*), that a dispositive order confirming the arbitrator's award denying the teacher's claim should be affirmed. [10-11]

CIVIL ACTION commenced in the Superior Court Department on April 22, 1997.

A motion to dismiss was heard by *Phillip Rapoza,* J.

*A. Douglas Matthews* for the plaintiff.

*Bruce A. Assad* for the defendant.

ARMSTRONG, C.J. The plaintiff, Kathleen Goncalo, appeals from a decision dismissing her application to vacate an arbitration award in favor of the Fall River school committee. She was a school teacher in Fall River teaching Spanish at the Talbot School in grades seven and eight. As a result of her union activity, she alleged, offerings in Spanish were cancelled at the end of June, 1984, and in the 1984-1985 school year she was reassigned to teach English — a subject for which she lacked requisite training. In circumstances that were in dispute, she stopped teaching in March, 1985,[1] although she was paid to the

---

[1]Apart from the dispute over the circumstances that caused Goncalo to stop teaching, it was disputed whether she had agreed to resign. Of the latter

end of the school year. In the ensuing nine school years, she did not teach, have a contract, or receive compensation or benefits from the Fall River school system.

On July 8, 1994, the superintendent of the Fall River school system sent the plaintiff a letter which, in relevant part, read:

> "Please be advised that the Fall River School Committee has not carried you on its rolls as an employee for many years as you voluntarily left your position in 1985. At the request of the Fall River Educators' Association, you have been deleted from the seniority list.

> "Although it should be clear that you are not an employee of the Fall River School Department nor of the Fall River School Committee, I am hereby notifying you pursuant to Massachusetts General Laws, Chapter 71, Section 42 that you are dismissed as a Teacher in the Fall River School System. The reasons for this dismissal are prior system reorganization, present system reorganization and budgetary reasons. A copy of that section is attached for your review."

Pursuant to the fourth par. of G. L. c. 71, § 42, as amended by the Education Reform Act, St. 1993 c. 71, § 44, Goncalo sought review of the dismissal by filing a petition for arbitration. The selected arbitrator heard five days' worth of testimony concerning Goncalo's disputed allegations as to the circumstances of her departure from teaching in the spring of 1985 and the reasons she had not been offered a contract since that time. Then, cutting off further testimony as to those controversies, and after giving the parties an opportunity to brief two legal questions, he issued a decision ruling on the basis of facts not in dispute that Goncalo, at the time she invoked arbitration, as matter of law

---

dispute, the arbitrator found only: "Although the administration asserts that in April of 1985 Goncalo and a representative of the union representing the teachers agreed that she would resign at the end of the school year, Goncalo has never submitted a resignation. Goncalo contends that if there was such an agreement to resign, it was unenforceable."

lacked the professional teacher status that was a precondition for her obtaining relief under § 42.[2]

Recognizing that Goncalo had achieved the status of a tenured teacher under G. L. c. 71, § 41, as it read before passage of the Education Reform Act in 1993, and that she would have had professional teacher status under § 41 as amended had it not been for the nine-year break in her teaching, the arbitrator ruled that she had lost any such status by failing to institute any judicial or administrative claim for nine years: "This acquiescence in the decision not to continue her in her teaching position [was], after a period of time, legally equivalent to accepting it." Continuity of service, the arbitrator ruled, "[was] required not only to attain tenure or professional teacher status but also to retain it. . . . The extended break in service [was] not bridged by any approved leave, contractual recall rights or other entitlement. There was no teaching or employment relationship for nine full school years prior to the July 8, 1994 notice." The arbitrator accordingly denied the claim.

In seeking to vacate the award, Goncalo was, in effect, attempting to convince the Superior Court judge that the arbitrator had erred in his rulings of law: that the Education Reform Act, contrary to the arbitrator's ruling, gave Goncalo professional teacher status in 1994, when she claimed arbitration,[3] and that, therefore, the arbitrator had erred in treating as immaterial the evidence by which she sought to show that her severance in 1985 and the refusals to offer her a contract during the nine ensuing years was in continuing retaliation for her union activity in 1984. Goncalo also argued that the arbitrator erred in ruling that

[2]In relevant part § 42 reads: "A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of dismissal by filing a petition for arbitration with the commissioner [of Education] . . . ."

[3]Her argument was that § 41, as amended in 1993, changed the pre-1993 tenure statute, which had given tenure to teachers who had served "for the three previous consecutive school years," so as to confer "professional teacher status" on any teacher who had served "for three consecutive years," and that she met that requirement on the basis of her pre-1985 service. By St. 1996, c. 99, the Legislature reinserted the word "previous" that had been left out in the 1993 reform. If the arbitrator's ruling was correct, the 1996 amendment was clarifying, not corrective, in nature.

he had no jurisdiction to determine whether she had tenure status when she left teaching in 1985.[4]

The judge properly refused to vacate the award. He cited well established principles on the judge's limited role in reviewing arbitration awards: that, "[a]bsent fraud, the court's inquiry is confined to the question whether the arbitrator exceeded the scope of his reference or awarded relief in excess of his authority," *School Comm. of Waltham* v. *Waltham Educators Assn.,* 398 Mass. 703, 705-706 (1986); and that a ruling that an arbitrator has committed an error of law does not normally call for reversal of his decision. *Id.* at 706. *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187-188 (1984). See *Lynn* v. *Thompson,* 50 Mass. App Ct. 280, 285 (2000) ("Courts may not vacate an arbitrator's award even if the award is based on an error of fact or of law"); *Reading* v. *Reading Patrolmen's Assn., Local 191,* 50 Mass. App. Ct. 468, 471 (2000) ("Neither error of law nor fact in an arbitrator's decision permit an award to be set aside").

We recognize that this arbitration was not by voluntary agreement of the parties, but by the mandate of § 42, and that the limited scope of judicial review cannot rest on the rationale advanced in private labor arbitration: "The parties bargained for [the arbitrator's] final interpretation of their collective bargaining agreement. They got what they bargained for." *Greene* v. *Mari & Sons Flooring Co., Inc.,* 362 Mass. 560, 563 (1972). The scope of judicial review is instead governed by the statute, § 42, as explained in *School Dist. of Beverly* v. *Geller,* 50 Mass. App. Ct. 290, 293 (2000); and § 42 invokes the scope of review set out in G. L. c. 150C, § 11, that is similarly restrictive in not permitting reversal based on an arbitrator's legal errors. Faced with the restrictive scope of review allowed by § 11, Goncalo argues that reversal can be predicated on § 11(*a*)(4), which allows reversal if an arbitrator "refuse[s] to hear evidence material to the controversy"; but the very point of the arbitrator's decision here was that the course of dealings

---

[4]This ruling was stated in the arbitrator's "Interim Decision" but was not repeated or relied on in the final decision. Indeed, in the latter the arbitrator expressly recognized that Goncalo had tenure status in the 1984-1985 school year.

between the parties in 1985 and in the nine years thereafter was *not* material to determining his jurisdiction because, by 1994, when she received the dismissal letter, there was no continuing employment relationship between Goncalo and the school system. The dismissal letter was, according to his ruling, a legal nullity.[5] The judge properly refused to review the correctness of that ruling of law.

Although the arbitrator characterized his award in the language of lack of jurisdiction, and the judge's order was characterized as a dismissal of the appeal, it is more consonant with the substance of the arbitrator's decision to characterize it as one ruling that Goncalo, because she lacked professional teacher status in 1994, and because no employment relationship had existed for many years, was not entitled to the relief she sought: namely, reinstatement and back pay. In accordance with c. 150C, § 11(*d*), the dispositive order in the judge's decision should be amended to state that the award is confirmed. As so amended, the order is affirmed.

*So ordered.*

---

[5]Compare *Kyriakopoulos* v. *George Washington Univ.*, 866 F.2d 438, 442–443 (D.C. Cir. 1989) (professor's claim that he was improperly denied promotion accrued in 1978 when professor was actually denied promotion, not in 1985 when the university purported to make a "retroactive" determination that the professor would not be promoted).