NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-906                                          Appeals Court

PLYMOUTH PUBLIC SCHOOLS  vs.  EDUCATION ASSOCIATION OF PLYMOUTH
                 & CARVER & another.[1]


                      No. 15-P-906.

     Plymouth.     April 11, 2016. - June 30, 2016.

          Present:  Cypher, Katzmann, & Massing, JJ.


School and School Committee, Professional teacher status,
     Maternity leave, Arbitration, Termination of employment.
     Arbitration, Arbitrable question, School committee.  Public
     Employment, Paid leave, Termination.  Family & Medical
     Leave Act.



     Civil action commenced in the Superior Court Department on
February 18, 2014.

     The case was heard by Frank M. Gaziano, J., on motions for
summary judgment.


     Matthew D. Jones (Ashley F. Call with him) for the
defendants.
     Michael J. Long for the plaintiff.


     MASSING, J.  Defendant Kristen Bilbo taught in the

plaintiff Plymouth Public Schools (district) over the course of

     [1] Kristen Bilbo.

five consecutive school years.  She took maternity leave during two of them.  The district tendered a notice of nonrenewal at the end of the fifth year.  Bilbo asserts that her service, interrupted only by her leave permitted under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. (FMLA), entitles her to professional teacher status,[2] giving her rights including arbitration of her dismissal.[3]  The district contends that Bilbo is not entitled professional teacher status or arbitration because she did not serve three consecutive full years.  We conclude that whether Bilbo has attained professional teacher status is for the arbitrator to decide.

Background.[4]  Bilbo worked full-time as a special education teacher at Plymouth North High School starting on March 10, 2008, through the end of the school year in June, 2013.  She

---

[2] "[A] teacher, school librarian, school adjustment counselor, school nurse, school social worker or school psychologist who has served in the public schools of a school district for the three previous consecutive school years shall be considered a teacher, and shall be entitled to professional teacher status as provided in section forty-two."  G. L. c. 71, § 41, as amended through St. 2006, c. 267.

[3] "A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the [C]ommissioner [of Elementary and Secondary Education]."  G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44.

[4] We draw our statement of facts from the parties' joint statement of uncontested facts and exhibits submitted with their cross motions for summary judgment.

took maternity leave during her first and fourth full years as a teacher, for sixty days in 2009 and for fifty-six days in 2012. Bilbo's leave was authorized under the FMLA. She was paid during both absences using accumulated sick time and a sick-leave bank available under the governing collective bargaining agreement. Toward the end of her fifth year of teaching, by letter dated May 31, 2013, the district provided Bilbo with notice that she would not be reappointed to a teaching position for the next school year.[5] The letter explained, "You are not being appointed to a teaching position based upon the recommendations of your supervising principal and program manager and the concerns about continuity of instruction and the education of our students."

Asserting that she possessed professional teacher status by virtue of her five consecutive school years of service,[6] Bilbo,

---

[5] The letter cited G. L. c. 71, § 41, a portion of which provides, "A teacher without professional teacher status shall be notified in writing on or before June fifteenth whenever such person is not to be employed for the following school year. Unless such notice is given as herein provided, a teacher without such status shall be deemed to be appointed for the following school year." Id., as appearing in St. 1993, c. 71, § 43.

[6] Bilbo has not asserted the alternative means of obtaining professional teacher status: "The superintendent of [a] district, upon the recommendation of the principal, may award such status to any teacher who has served in the principal's school for not less than one year or to a teacher who has obtained such status in any other public school district in the

through the defendant Education Association of Plymouth and Carver (union), timely petitioned the Commissioner of Elementary and Secondary Education (commissioner) for arbitration of her status. The district opposed her request, arguing that she lacked professional teacher status and was therefore ineligible for arbitration. The commissioner on January 9, 2014, forwarded Bilbo's petition to the American Arbitration Association, noting that "before addressing the merits of the dispute, the arbitrator should first address the question of arbitrability raised by the [district]."

On February 18, 2014, the district filed the instant complaint in the Superior Court against Bilbo and the union,[7] together with a motion for a preliminary injunction seeking to stay the arbitration. After a hearing, a judge denied the preliminary injunction motion on March 4, 2014, reasoning that G. L. c. 71, § 42, and our decision in Turner v. School Comm. of Dedham, 41 Mass. App. Ct. 354 (1996), mandated "that arbitration be the sole method used to resolve disputes concerning teacher termination in this Commonwealth, including disputes in which a teacher's status as a professional teacher is questioned."

commonwealth." G. L. c. 71, § 41, as amended by St. 1996, c. 450, § 127.

[7] The complaint's three counts sought a stay of the arbitration, a declaration that Bilbo did not have professional teacher status, and a declaration that Bilbo's nonrenewal by the district was proper.

Bilbo and the union next moved to dismiss the complaint. While the motion to dismiss was pending, the parties proceeded to arbitration, submitting the matter to the arbitrator in the form of a joint statement of facts and legal memoranda in lieu of a formal hearing. Before the arbitrator issued a decision, however, a second judge denied the defendants' motion to dismiss, reasoning that the question of Bilbo's professional teacher status was for the court and not the arbitrator to decide. The arbitrator agreed not to issue his decision pending final resolution of the litigation.[8]

On December 17, 2014, the parties simultaneously filed cross motions for summary judgment. After a hearing, a third judge allowed the district's motion and denied Bilbo's and the union's motion. Judgment entered for the district, declaring that Bilbo did not have professional teacher status at the time the district notified her of nonrenewal and that the nonrenewal did not violate the FMLA or the Massachusetts parental leave statute, G. L. c. 149, § 105D. The judgment also ordered a permanent stay of the arbitration. Bilbo and the union timely appealed from the judgment.

_____

[8] Bilbo and the union then filed an answer and a counterclaim in three counts: to compel arbitration, to confirm any award issued by the arbitrator, and for a declaration that arbitration is the exclusive forum for determining Bilbo's professional teacher status.

Arbitration of professional teacher status. The first issue before us -- and the only issue we reach -- is whether the question of Bilbo's professional teacher status is for an arbitrator or a judge to decide. As the judge who denied the district's motion to preliminarily enjoin arbitration aptly noted, there is a "chicken and the egg nature" to this question.

A teacher who teaches for three consecutive school years in a public school district of the Commonwealth and is not tendered written notice of nonrenewal by June 15 of the third year is entitled to "professional teacher status" under G. L. c. 71, § 41. Professional teacher status confers certain rights, including a degree of protection from dismissal,[9] the right to seek review of a dismissal decision through arbitration, and, in the case of layoffs, the right to "bump" teachers without such status. See G. L. c. 71, § 42.

If Bilbo's five school years of service, interrupted only by maternity leave in year one and year four, entitled her to professional teacher status, then the district's action amounted

---

[9] "A teacher with professional teacher status . . . shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause." G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44. Moreover, school principals "must follow strict procedural and substantive provisions before firing a teacher with professional status." School Comm. of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 761 (2003).

to a "dismissal" under § 42, triggering the procedural and substantive rights that accompany professional teacher status -- including arbitration. If not, then the district's action was simply a "nonrenewal" under § 41. See note 5, supra. "A dismissal is not the same as a nonrenewal of a contract." Laurano v. Superintendent of Schs. of Saugus, 459 Mass. 1008, 1009 (2011), quoting from Downing v. Lowell, 50 Mass. App. Ct. 779, 782 (2001). If Bilbo "was not dismissed from her position," then "she was not entitled to the safeguards provided in G. L. c. 71, § 42," Laurano, supra -- including arbitration. Thus, the threshold question whether Bilbo has professional teacher status is determinative of whether she is entitled to arbitration of any dismissal.

We have previously held that this question is within the scope of the arbitrator's authority. The appeal in Turner v. School Comm. of Dedham, 41 Mass. App. Ct. 354 (1996), presented nearly the mirror image of the case now before us. After receiving notice that she was being laid off by the Dedham school where she taught, Pauline Turner filed a complaint in Superior Court seeking a declaration that she had professional teacher status and requesting an order that the school reinstate her and "bump" another teacher. Id. at 355. The school defendants filed a motion to dismiss, arguing that Turner's sole

remedy to challenge her dismissal was through arbitration under G. L. c. 71, § 42. Turner, supra.

This court agreed, stating that the Education Reform Act of 1993, see St. 1993, c. 71, "t[ook] away the right of teachers to challenge their dismissal by filing an action in the Superior Court," and instead "establish[ed] arbitration as the sole remedy for all dismissals." Turner, supra at 357-358. Much like the district argues now, Turner argued then that the Legislature's requirement of arbitration of dismissals did not prevent, as a threshold matter, "filing a complaint in the Superior Court seeking a declaration that he or she has attained professional teacher status." Id. at 358. We rejected that argument:

> "We disagree with Turner's argument because such an action would result in a Superior Court judge having to first make a declaration as to the status of the dismissed teacher, and then, if the judge declares that the teacher has acquired that status, the matter being remanded for arbitration as to his or her 'bumping rights.' We do not think that the Legislature intended to establish two successive forms of review in two different forums for dismissed teachers with professional status."

Ibid.

Here, too, treating the question of Bilbo's status separately from the propriety of her dismissal presents the risk of two successive forms of review in two different forums. The district makes a futile attempt to distinguish Turner by arguing that the concern with two successive forms of review is not

present here because the only question to be determined is whether Bilbo enjoys professional teacher status. While it is true that a judicial determination that Bilbo does not have professional teacher status would be the end of the matter -- she would not be entitled to arbitration of the grounds for her dismissal -- the same was true in Turner. A judicial determination that Turner did not have professional teacher status would not have required a remand to determine her bumping rights. However, if a judge were to declare that Bilbo did have professional status, the merits of any dismissal decision would be for an arbitrator to review.

The decision in Lyons v. School Comm. of Dedham, 440 Mass. 74 (2003), reinforces our decision in Turner. After this court affirmed the dismissal of Turner's complaint, she and another Dedham teacher, Anne Lyons, had separate arbitration proceedings to determine their professional teacher status. Id. at 76. The arbitrators issued a joint decision, concluding that Turner and Lyons were not "teachers" within the meaning of G. L. c. 71, §§ 41 and 42, because their employment status as "Chapter I teachers" -- hired under a federally funded program providing supplemental instruction to designated students in reading and mathematics -- did not equate with the qualifications and characteristics of classroom teachers in the "Unit A" collective bargaining unit. Id. at 75-77. Lyons and Turner (again) filed

a complaint in Superior Court, seeking to vacate the arbitrators' decision and for a declaration that they were "teachers" within the meaning of the statute. Id. at 77. A judge of the Superior Court vacated the arbitration award, ibid., which the Supreme Judicial Court reinstated. Id. at 82-83.

The court rejected the argument that the determination of professional teacher status under G. L. c. 71, § 42, was outside the jurisdiction of the arbitrators and reserved for the courts. Id. at 79-82. Relying on School Dist. of Beverly v. Geller, 435 Mass. 223, 230 (2001) (Cordy, J., concurring) ("[T]he responsibility for interpreting the meaning of G. L. c. 71, § 42, and the scope of the arbitrator's authority thereunder remains with the court"), Turner and Lyons argued that "the judiciary is responsible for independently determining whether [they] are teachers under G. L. c. 71, §§ 41 and 42." Lyons, supra at 81. The court disagreed, observing that G. L. c. 71 "does not define 'teacher' in the context of delineating who is eligible for 'professional teacher status,'" ibid., and concluding that "the arbitrators had the authority to determine whether Lyons and Turner were teachers," id. at 82.

As an arbitrator has the authority to determine whether a person "shall be considered a teacher" within the meaning of G. L. c. 71, § 41, we perceive no reason why an arbitrator does

not equally have the authority to determine whether a person "has served in the public schools of a school district for the three previous consecutive school years" within the meaning of the same sentence of the same statute. See note 2, supra.

In addition, we have held that an arbitrator may properly consider a similar question: whether a lengthy break in service deprives a teacher of professional teacher status. In Goncalo v. School Comm. of Fall River, 55 Mass. App. Ct. 7, 7-8 (2002), a tenured teacher[10] stopped teaching after a dispute with school officials, which, she alleged, was related to her union activities. Nine years later, the school sent her a letter formally dismissing her as a teacher. Id. at 8. The teacher sought to arbitrate her dismissal, but the arbitrator declined to consider whether the school's refusal to offer her a contract during those nine years was in continuing retaliation for her union activities, deciding instead that she was not entitled to arbitration because her break in service caused her to lose her professional teacher status. Id. at 8-9. We confirmed the arbitrator's decision, concluding that the arbitrator did not exceed his authority. Id. at 10-11.

Given "the strong public policy favoring arbitration," Lyons, 440 Mass. at 77, quoting from Plymouth-Carver Regional

---

[10] The plaintiff had achieved tenure under G. L. c. 71, § 41, as it read before passage of the Education Reform Act in 1993. Goncalo, 55 Mass. App. Ct. at 9.

Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990), the preference for arbitration expressed in the Education Reform Act of 1993, and our prior decisions, we hold that the issue whether Bilbo has professional teacher status must be decided by an arbitrator.

Additional considerations. Both parties contend that important public policy considerations require a determination in their favor on the issue of professional teacher status. Bilbo and the union contend that the FMLA forbids penalizing pregnant employees, or any other employee who takes FMLA-qualifying leave, by putting them in a worse position than if they had not taken leave. The district maintains that service time can be measured only in full-year increments, and that three uninterrupted years of review are necessary for schools to properly evaluate teachers and make staffing decisions for the next year. See G. L. c. 71, § 41 ("A teacher without professional teacher status shall be notified in writing on or before June fifteenth whenever such person is not to be employed for the following school year" [emphasis supplied]).[11]

_____

[11] A case interpreting the tenure statute prior to amendment by the Education Reform Act of 1993 held that "[t]he time spent on maternity leave [under G. L. c. 149, § 105D,] may not be counted towards the amount of time required for tenure," but at the same time, that maternity leave "does not interrupt the consecutiveness of [the teacher's] service except as to the period of time consumed by the leave." Solomon v. School Comm. of Boston, 395 Mass. 12, 18-19 (1985). The court left open "the

"An arbitration award that offends public policy 'is beyond the arbitrator's powers and is therefore subject to vacation under G. L. c. 150C, § 11(a)(3)." Lyons, 440 Mass. at 79, quoting from Massachusetts Hy. Dept. v. American Fedn. of State, County & Mun. Employees, Council 93, 420 Mass. 13, 16 (1995). However, "because the public policy 'doctrine allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to "judicialize" the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.'" Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 604 (2000), quoting from E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Assn. of E. Chicago, 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853 (1986). Because of the view we take on the threshold question of arbitration, we decline to address the parties' public policy arguments, which are in any event unripe at this juncture.

Conclusion. The defendant Bilbo is entitled to arbitration of her professional teacher status and, if the arbitrator determines that she enjoys such status, ultimately of the merits of any dismissal. The judgment of the Superior Court is

_____

question whether such teacher must serve an entire additional year to compensate for the incomplete school year," id. at 19, a question that appears to have remained open these thirty years.

reversed and a new judgment shall enter on all counts of the complaint and counterclaim consistent with this opinion.

<u>So ordered</u>.